# EXHIBIT  1

Form **843**

(Rev. August 2011)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:

(a) a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,

(b) an abatement of FUTA tax or certain excise taxes, or

(c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:

(a) an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),

(b) a refund of excise taxes based on the nontaxable use or sale of fuels, or

(c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name(s) | Your social security number |
|---|---|
| AVX Corporation | |
| Address (number, street, and room or suite no.) | Spouse's social security number |
| 1 AVX Boulevard | |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| Fountain Inn, SC 29644 | ▮ |
| Name and address shown on return if different from above | Daytime telephone number |
| | 404-881-7980 (POA) |

| | | | |
|---|---|---|---|
| **1** | **Period.** Prepare a separate Form 843 for each tax period or fee year.<br>From     04/01/2011     to     03/31/2012 | **2** | **Amount** to be refunded or abated:<br>$     200,000 |

**3** **Type of tax or fee.** Indicate the type of tax or fee to be refunded or abated or to which the interest, penalty, or addition to tax is related.

☐ Employment     ☐ Estate     ☐ Gift     ☐ Excise     ☑ Income     ☐ Fee

**4** **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section:     6038B

**5a** **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)

☐ Interest was assessed as a result of IRS errors or delays.

☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.

☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Date(s) of payment(s) ▶ See Exhibit 8 attached. Part of AVX's refund for tax year ended 03/31/17 was applied to penalties assessed

**6** **Original return.** Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.

☐ 706     ☐ 709     ☐ 940     ☐ 941     ☐ 943     ☐ 945
☐ 990-PF     ☐ 1040     ☑ 1120     ☐ 4720     ☐ Other (specify) ▶

**7** **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

See Attached Explanation Statement and Exhibits 1-9.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

*[signature]*     SR. VICE-PRESIDENT / CFO     5.1.19

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)     Date

Signature (spouse, if joint return)     Date

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | George B. Abney | *[signature] B. a—* | 05/06/19 | | |
| | Firm's name ▶ Alston & Bird LLP | | | Firm's EIN ▶ ▮ | |
| | Firm's address ▶ 1201 W. Peachtree St., Suite #4900, Atlanta, GA 30309 | | | Phone no. | 404-881-7980 |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.     Cat. No. 10180R     Form **843** (Rev. 8-2011)

## EXPLANATION STATEMENT TO ACCOMPANY IRS FORMS 843 CLAIM FOR REFUND AND REQUEST FOR ABATEMENT

### AVX CORPORATION
### EIN: ███████

This explanation statement is provided in support of the IRS Forms 843, Claim for Refund and Request for Abatement, submitted by AVX Corporation ("AVX") for its tax years ended March 31, 2012, 2013 and 2014. AVX hereby protests the IRS's assessment of $600,000 in penalties under I.R.C. § 6038B[1] for tax years 2012 through 2014, as set forth in its Notices CP215, dated December 18, 2017, and in its Form 886-A, Explanation of Items, dated October 12, 2017. *See* Exhibit 1 (IRS Notices CP215 For Tax Years 2012, 2013, and 2014 and IRS Form 886-A, Explanation of Items).

AVX is entitled to post-assessment, pre-payment penalty appeal rights. *See* Internal Revenue Manual ("IRM") 8.11.5.4(3). Additionally, AVX is a "Category 1 Taxpayer" entitled to Accelerated Appeals pre-payment review of International penalties. *See* IRM 8.11.5.14. AVX submitted a formal protest of the assessed penalties to the IRS on January 11, 2019. However, the IRS confirmed that it misplaced and lost AVX's submission. *See* Exhibit 9 (Return receipt confirmation of AVX's submission of its formal protest to the IRS on 01/11/18 and follow-up correspondence with Revenue Agent J. Rowena Cheek regarding status of submission). In violation of AVX's pre-payment penalty appeal rights, the IRS improperly applied part of AVX's 2017 refund due to the penalties assessed without ever considering AVX's formal protest and appeal. *See* Exhibit 8 (IRS Notice CP138 applying $600,000 of AVX's overpayment on its Form 1120 for tax period ending March 31, 2017 to other taxes). As such, AVX respectfully requests prompt reconsideration of the assessed penalties and a refund of $600,000 plus accrued interest.

## I.    SUMMARY OF THE ARGUMENT

In support of its protest, AVX relies primarily on the following:

---

[1] All references to the "I.R.C." or the "Code" are to the Internal Revenue Code of 1986, as amended.

## A. If it is Determined That AVX is Subject to Penalties, the Maximum Amount that Can be Assessed is $100,000.

Generally, penalties assessed under I.R.C. § 6038B equal 10% of the fair market value of the property at the time of the exchange. However, these penalties are limited to a maximum of $100,000 per exchange, unless the failure to furnish the required information is due to intentional disregard. The IRS has assessed $600,000 in penalties against AVX under I.R.C. § 6038B. To reach this total, the IRS erroneously applied the penalty limit on a per-form basis, imposing the maximum $100,000 penalty for each of 6 agreements that the IRS claims AVX failed to timely file. But being the common parent of a consolidated group, AVX was required to file consolidated agreements on behalf of itself and its wholly owned subsidiary for tax years 2012 through 2014. *See* Treas. Reg. § 1.367(a)-8(d)(3) ("If the U.S. transferor is a member but not the common parent of a consolidated group, the common parent of the consolidated group is the agent for the U.S. transferor . . . Thus, the common parent must file the gain recognition agreement on behalf of the U.S. transferor."). The IRS's assertion is in error because AVX was only required to furnish 3 consolidated agreements. And furthermore, according to the express statutory language in the Code, the penalty limitation is applied on a per exchange basis, not on a per-form basis as asserted by the IRS. *See* I.R.C. § 6038B(c)(3) ("The penalty under paragraph (1) with respect to *any exchange* shall not exceed $100,000 unless the failure *with respect to such exchange* was due to intentional disregard."). For tax years 2012 through 2014, the AVX consolidated group was only involved in a single integrated exchange that was subject to the information reporting requirements of I.R.C. § 6038B. And as confirmed by the IRS, AVX's failure to timely file its agreements was not willful or due to intentional disregard. *See* Exhibit 3 (IRS Letters 4861, IRS Determination That AVX's Failure to File Wasn't Willful). Thus, the maximum penalty that AVX can be subject to is $100,000 per exchange. If it is determined that AVX is subject to penalties, the maximum it can be assessed is $100,000.

## B. No Penalties Can be Imposed because AVX's Failure to Timely Furnish the Required Information Was Attributable to Reasonable Cause and Not to Willful Neglect.

AVX has a long history of compliance with its tax reporting and disclosure obligations. Its obligation to timely furnish the agreements for

which it is being penalized for stems from a single, complex, international transaction that took place in tax year 2012. Around the time of the transaction, AVX had recently employed a new Director of Taxes who possessed very limited experience in the international tax arena. Compounding this lack of experience, its Corporate Tax Department had also experienced 100% turnover in the year leading up to the transaction. Ultimately, these challenging circumstances led to procedural misunderstandings between AVX and its outside tax advisor whom AVX was forced to heavily rely on given its situation. But AVX's delayed filing was not due to any willful intent to disobey taxing statutes, or a lack of good faith effort to comply with its tax filing obligations defined in the Code. AVX exercised ordinary business care and prudence, and timely filed all returns and disclosures that had any bearing on its actual tax liability. And AVX's failure to timely file the 3 information-only agreements caused no loss of revenue or tax harm to the government. Upon learning of its mistake, AVX acted promptly and in a responsible manner to correct the error. AVX's compliance history and prompt correction of its inadvertent mistake demonstrate that its failure to timely file the agreements was attributable to reasonable cause and not to willful neglect. Therefore, no penalties can be imposed under I.R.C. § 6038B. *See* I.R.C. § 6038B(c)(2) ("Paragraph (1) (imposing a penalty for failure to furnish required information) shall not apply to any failure if the United States person shows such failure is *due to reasonable cause and not willful neglect*.").

### C. The Assessed Penalties Violate the U.S. Constitution's Prohibition Against Excessive Fines.

The Eighth Amendment to the U.S. Constitution prohibits the government from imposing excessive fines. U.S. Const., Amdt. 8 (the "Excessive Fines Clause"). The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: the amount of the penalty must bear some relationship to the gravity of the offense that it is designed to punish. *See Austin v. United States*, 509 U.S., at 622-623. A punitive fine, penalty, or forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the offense committed. *See United States v. Bajakajian*, 524 U.S. 334 (1998). Pursuant to I.R.C. § 6038B, the IRS has assessed $600,000 in penalties against AVX based on the erroneous assertion that AVX failed to timely file 6 information-only agreements. However, had AVX timely furnished the agreements, it would not have been required to recognize any taxable gain.

And similarly, even when AVX actually furnished the agreements delinquently, the IRS determined that AVX was not required to recognize any taxable gain on the transaction. *See* Exhibit 3 (IRS Letters 4861, IRS Determination That AVX's Failure to File Wasn't Willful); *See also* Treas. Reg. § 1.367(a)-8(p) ("A failure to file or failure to comply will be deemed to not have occurred for purposes of recognizing gain under I.R.C. § 367(a)(1) . . . if the U.S. transferor demonstrates that the failure was not willful."). Thus, AVX's failure to timely file these information-only agreements resulted in no loss of tax revenue or tax harm to the government. The assessed penalties, therefore, violate the Excessive Fines Clause as they are grossly disproportionate to the gravity of AVX's minor filing errors.

## II.    FACTUAL BACKGROUND

### A. General Background.

AVX is a U.S. corporation, 72% of which is owned by Kyocera Corporation. It designs, manufactures, and distributes electronic components. AVX's taxable year end is March 31, and it wholly owns a U.S. subsidiary, AVX Development, Inc. ("AVX Development").

The transaction that gave rise to AVX Consolidated Group's ("AVX Group's") obligation to furnish the agreements at issue was one component of a plan to implement a European holding company structure. The ultimate goal of this restructuring was to create an aligned global organization that complemented and facilitated the operational management of AVX Group.

### B. The Relevant Timeline.

> *a. The Transfers by AVX and AVX Development to AVX Koninkrijk der Nederlanden CV ("AVX CV").*

On March 8, 2012, under the guidance of PricewaterhouseCoopers LLP ("PwC"), an external accounting firm that AVX employed as its outside tax advisor, AVX Group decided to form a Dutch partnership, AVX CV. AVX Group elected to treat the partnership entity as a corporation for U.S. tax purposes. But because AVX CV was still a partnership for Dutch purposes, it was required to have two owners.

Accordingly, on March 12, 2012, as part of the overall restructuring plan, the AVX Group engaged in an integrated transaction. AVX contributed to AVX Development 0.9% of Elco Europe GmbH ("Elco"), a German controlled foreign corporation. Then, pursuant to I.R.C. § 351, AVX contributed 89.1% and AVX Development contributed 0.9%, respectively, of Elco to AVX CV (this integrated exchange where AVX and AVX Development contributed their respective interests in Elco to AVX CV constitutes the "Reorganization of Elco"). The Reorganization of Elco was structured so that after implementation, there were two owners of AVX CV; AVX had a 99.0% percent ownership interest, and AVX Development had a 1.0% ownership interest, in its voting power and value.

### b. AVX's Consolidated Federal Tax Return Filings for Tax Years 2012 Through 2014.

As the parent of the AVX Group, AVX prepared its financial statements, and filed its tax returns and disclosures on a consolidated basis. On December 15, 2012, after being granted an extension of time to file, AVX timely filed its Form 1120 – U.S. Corporation Income Tax Return ("Corporate Tax Return") along with other required information for its tax year ended March 2012. At this time, AVX was unaware its obligation, and thus did not include, an initial Gain Recognition Agreement ("GRA") for the Reorganization of Elco with this filing.

For its tax years ended March 2013 and March 2014, AVX properly and timely filed its Corporate Tax Returns along with other required information. AVX was unaware of its obligation, and thus did not include, a Gain Recognition Agreement Annual Certification ("GRA AC") for the Reorganization of Elco with these filings.

### c. The Discovery of AVX's Failure to File The Initial GRA With its Original 2012 Corporate Tax Return.

In late January 2013, AVX's Director of Taxes, Emile Artus, was contacted by PwC regarding required 2012 disclosures related to the Reorganization of Elco. At this point, it was discovered that the GRA related to the Reorganization of Elco, and certain other required disclosures, had not been timely filed with AVX's original Corporate Tax Return in December 2012.

Upon this discovery, AVX immediately engaged PwC to prepare the required GRA and disclosures, which, upon completion, were to be furnished to AVX for its inclusion in an amended 2012 Corporate Tax Return. During the preparation process, draft copies of the GRA were circulated by PwC to AVX, followed by the AVX Corporate Tax Department subsequently returning the draft copies with marked revisions to PwC. However, after this point, AVX has no record of having ever received a final version of the GRA with the completed revisions back from PwC.

In March 2013, AVX filed a Form 1120X – Amended U.S. Corporation Income Tax Return ("Amended Corporate Tax Return") for its taxable year ended March 2012. Included with this filing were completed and final copies of Forms 8838 – Consent to Extend Time to Assess Tax under Section 367 — Gain Recognition Agreement ("Forms 8838"). Also included was a "Statement of Reasonable Cause" under Temp. Treas. Reg. § 1.367(a)-8(p) (the "Disclosure Statement"). Both the Forms 8838, which AVX had been required to file with its original 2012 Corporate Tax Return, and the Disclosure Statement, which explained the reasons for AVX's delayed filing, were prepared and furnished to AVX by PwC, to be included with AVX's Amended Corporate Tax Return. AVX fully intended for the GRA to also be included with this filing. But having never received a final completed version of the GRAs back from PwC along with the Forms 8838 and Disclosure Statement, AVX mistakenly omitted filing it.

> d. *The Discovery of AVX's Failure to File the GRA With its First 2012 Amended Corporate Tax Return.*

In December 2015, J. Rowena Cheek, an IRS agent then conducting the international portion of a tax audit of the AVX Group for tax years ended March 31, 2013 and 2014, contacted AVX's Corporate Tax Department to request the GRA related to the Reorganization of Elco. Ms. Cheek made this request on December 21, 2015, via an Information Document Request ("IDR") on IRS Form 4564. *See* Exhibit 4 (IRS Form 4564, Information Document Request).

AVX responded by furnishing the documents it had received in final completed form from PwC. This included the Forms 8838 and the Disclosure Statement which had been filed with its Amended Corporate Tax Return in March 2013. However, because PwC had never sent back final

completed versions of the GRA to AVX, the GRA was mistakenly omitted from the filing, and thus was not included in AVX's response to the IDR.

Upon being informed by Ms. Cheek of the missing GRA, AVX promptly engaged PwC to prepare and furnish to AVX a completed GRA and GRA ACs (collectively the "Agreements"). AVX received final completed copies of the Agreements from PwC in February 2016. At that point, since AVX was still under audit for its 2013 and 2014 tax years, AVX requested guidance from the IRS agents assigned to the audit, including Ms. Cheek, as how to best effect prompt filing of the requested Agreements.

On March 14, 2016, Ms. Cheek instructed AVX to file a second Amended Corporate Tax Return for 2012 containing the GRA, and Amended Corporate Tax Returns for tax years 2013 and 2014, each containing a GRA AC. Because the Agreements had yet to be filed, Ms. Cheek advised AVX that it was also required to include Statements of Non-Willful Intent Requesting Relief under I.R.C. § 367(a) and § 6038B for Reasonable Cause.

On May 2, 2016, in accordance with Ms. Cheeks' instructions, AVX promptly submitted a second Amended Corporate Tax Return for 2012 with a GRA, and Amended Corporate Tax Returns for 2013 and 2014, each with a respective GRA AC. AVX also included Statements of Non-Willful Intent Requesting Relief for Reasonable Cause under Treas. Reg. § 1.6038B-1(f) and § 1.6038B-1T(f). *See* Exhibit 5 (AVX's Amended Tax Returns for 2012, 2013, and 2014).

### C. The Major Changes in AVX's Corporate Tax Department Leading up to Reorganization of Elco.

Emile Artus, Director of Taxes, was the head of the Corporate Tax Department at AVX leading up to and during the time of the Reorganization of Elco. As such he was responsible for including any required filings with AVX's Corporate Tax Returns. At the time of AVX's filings for tax years 2012 through 2014, Mr. Artus had been newly employed as the Director of Taxes. He was very inexperienced in the realm of international taxation, and was very unfamiliar with the filing requirements related to a transfer under I.R.C. § 367(a). Prior to the Reorganization of Elco, in March 2012, none of the members of the AVX Group had ever been involved in an international I.R.C. § 367(a) transfer, which required filing a GRA and GRA ACs.

Mr. Artus is a Certified Public Accountant with over 25 years of experience in tax compliance. He was appointed to the position of Director of Taxes at AVX on April 1, 2011. Prior to this appointment, his positions had been with small, domestic, public and private companies, which did not have the complex international operations of AVX. Mr. Artus does have extensive experience in domestic tax compliance and in tax accounting. But prior to joining AVX, his international tax compliance exposure was extremely limited having been confined predominantly to the preparation of a few information returns.[2]

Mr. Artus did have some experience in one of his former positions with the sale of foreign subsidiaries to a third party. But unlike the Reorganization of Elco, there were no reporting requirements under I.R.C. § 6038B as a result of those transactions. Moreover, in this former position, any unusual international tax compliance filings or matters that Mr. Artus was unfamiliar with were completely prepared and handled by external tax advisors. In none of his former positions had Mr. Artus ever dealt with a n the amount of $600,000 against AVX. Yet member of the same corporate group. The Reorganization of Elco was the first such transaction to which Mr. Artus had exposure to over the course of his career.

At the time AVX decided to enter into the Reorganization of Elco, Mr. Artus had assumed the position of Director of Taxes at AVX a mere 11 months beforehand. He was still, with the assistance of the former Director of Taxes who had been retained as a consultant, transitioning into this challenging and demanding role. Due to the complexity of AVX's international operations, this transition continued throughout, and even beyond, the Reorganization of Elco.

On top of having recently employed a new Director of Taxes, who had to quickly become acquainted with the complex nature of both AVX's domestic and international operations, AVX also experienced 100% turnover in its Corporate Tax Department in the year prior to the Reorganization of Elco. Because of these unusual and significant changes, AVX was forced to rely more so than usual on PwC for assistance with its tax compliance.

---

[2] Specifically, Form 5471 – Information Return of U.S. Persons With Respect To Certain Foreign Corporations, and Form 8858 – Information Return of U.S. Persons With Respect to Foreign Disregarded Entities.

**D. AVX Heavily Relied on PwC to Prepare and Furnish Final Completed Copies of the Agreements to be filed with AVX's Corporate Tax Returns.**

AVX decided to pursue the overall plan of implementing a European holding company structure upon the engagement of PwC on July 12, 2011. AVX was forced to rely more so than usual on PwC for advice and assistance with its tax compliance because it was the very first time Mr. Artus had ever dealt with this type of complex international transaction. Additionally compounding this lack of experience, AVX had also just experienced complete turnover in its Corporate Tax Department.

AVX expected, and was under the impression, that PwC would prepare and provide to AVX final completed copies of all required tax documents related to the Reorganization of Elco. AVX would then be responsible for submitting them with its Corporate Tax Returns. These expectations were based on a Legal Steps Plan provided to AVX by Allen & Overy, Netherlands counsel whom PwC was working with, which indicated that Allen & Overy and PwC would be responsible for all the actions associated with the Reorganization of Elco. *See* Exhibit 6 (Allen & Overy, LLP, Legal Steps Plan), pg. 7, Item number 15. Additionally, prior to consummation of the overall plan, PwC provided AVX with a Work-Plan.

But overall, the Work-Plan was very limited in the detail it provided, and was missing information under most of the column headings. While it listed AVX as the "Resource" next to the step of preparing and filing a gain recognition agreement for the Reorganization of Elco, it failed to specifically reference the preparation or filing of a GRA in the Documentation section. *See* Exhibit 7 (PwC Work-Plan), Step 3.4 & Section 8. All that was mentioned in the Documentation section was a broad indication that PwC would prepare required organization statements for Forms 5471. *See Id.*, Step 8.3. The Work-Plan also contradicted Allen & Overy's Legal Steps Plan which indicated that Allen & Overy and PwC would be responsible for all actions associated with the Reorganization of Elco.

The lack of detail in the Work-Plan and contradictory language between it and the Legal Steps Plan created confusion, and ultimately contributed to AVX's delinquent filings. It was unclear and hard to determine which tasks AVX was responsible for and which tasks would be

handled by PwC.

AVX was under the impression that even if it was ultimately going to be responsible for furnishing the Corporate Tax Returns and accompanying disclosures to the IRS, PwC would at the very least remind Mr. Artus of any filings that needed to be included prior to the due date. But in contrast to AVX's understanding, and due to a lack of clarity provided in its Work-Plan, PwC was under the impression that it was not engaged to prepare and complete the GRA, and that AVX understood it must prepare and file this document. PwC assumed that AVX would complete the GRA as part of AVX Group's annual tax compliance work for the 2012 tax year.

Accordingly, PwC did not inquire of Mr. Artus, or of anyone else at AVX, prior to December 15, 2012, as to whether AVX had prepared, and was planning to file, the GRA with its 2012 Corporate Tax Return. As a result of this procedural misunderstanding, when AVX timely filed its initial 2012 Corporate Tax Return on December 15, 2012, it was unaware that the GRA needed to be included, and thus omitted it from the filing.

## III.  ARGUMENT

### A. If AVX is Subject to I.R.C. § 6038B Penalties, the Maximum that Can be Assessed is $100,000.

If a U.S. person fails to furnish information in accordance with I.R.C. § 6038B, and the reasonable cause exception does not apply, that person must pay a penalty equal to 10% of the fair market value of the property transferred, as of the date of the transfer. *See* I.R.C § 6038B(c)(1). However, as indicated in the Code, and further detailed in the IRM, there is a limit on the penalty that can be assessed. *See* I.R.C. § 6038B(c)(3) ("The penalty under paragraph (1) with respect to any exchange shall not exceed $100,000 unless the failure with respect to such exchange was due to intentional disregard."); *See also,* IRM 20.1.9.7.4-1(c) ("The U.S person must pay a penalty equal to 10% of the fair market value of the property on the date of transfer, not to exceed $100,000, unless the failure was due to intentional disregard."). Absent intentional disregard of required filing obligations, a U.S. person can only be subject to a maximum penalty of $100,000 per exchange.

The IRS has indicated that AVX's failure to timely file its Agreements was not willful. *See* Exhibit 3 (IRS Letters 4861, IRS Determination That AVX's Failure to File Wasn't Willful). Furthermore, AVX's failure was not due to intentional disregard of its required filing obligations. Instead, the failure was due to unusual and significant changes in AVX's Corporate Tax Department around the time of the Reorganization of Elco, and a good-faith misunderstanding between AVX and its outside tax advisor, PwC. Because the failure to timely furnish the Agreements was not due to intentional disregard, AVX is subject to a maximum penalty under I.R.C. § 6038B of $100,000 per exchange.[3] For tax years 2012 through 2014, the AVX Group was only involved in a single integrated exchange that was subject to the information reporting requirements of I.R.C. § 6038B. This was the transfer, as part of AVX's overall plan to implement a European holding company structure, on March 12, 2012, by AVX and AVX Development of the respective interests in Elco to AVX CV. Thus, AVX can only be subject to a maximum total penalty of $100,000.

But to punish AVX for its failure to timely file 3 information-only documents,[4] the IRS incorrectly, and unreasonably, assessed $600,000 in penalties. To reach this total, the IRS imposed the $100,000 penalty limit on a per-form basis, assessing the maximum penalty for each of the 6 individual Agreements that the IRS asserts AVX was obligated to timely file. But similar to its obligation to file consolidated financial statements and tax returns, AVX, as the common parent of the AVX Group, was required to file consolidated Agreements on behalf of itself and AVX Development for tax years 2012 through 2014. *See* Treas. Reg. § 1.367(a)-8(d)(3) ("If the U.S. transferor is a member but not the common parent of a consolidated group, the common parent of the consolidated group is the agent for the U.S.

---

[3] As discussed in the next section of this protest, AVX is not subject to penalties under I.R.C. § 6038B because its failure to file the Agreements was due to reasonable cause and not to willful neglect. Thus, AVX is exempt from any penalties under the reasonable cause exception of I.R.C. § 6038B(c)(2). But in considering the issues in this protest, the analysis must examine the legitimacy and amount of any possible penalties asserted by the IRS.

[4] (i) An Initial Consolidated GRA for AVX and AVX Development for tax year 2012; (ii) A Consolidated GRA AC for AVX and AVX Development for tax year 2013; and (iii) A Consolidated GRA AC for AVX and AVX Development for tax year 2014.

transferor . . . Thus, the common parent must file the gain recognition agreement on behalf of the U.S. transferor."). Thus, as opposed to the IRS's assertion, AVX was actually only obligated to timely file 3 Agreements.

Furthermore, and more significantly, the IRS violated the express language of the Code by applying the I.R.C. § 6038B penalty on a per-form basis instead of on a "per-exchange" basis. *See* I.R.C. § 6038B(c)(3) ("The penalty under paragraph (1) *with respect to any exchange* shall not exceed $100,000 unless the failure *with respect to such exchange* was due to intentional disregard.").

Certain penalty limits in the Code, are imposed on a per-form basis. This means that a given penalty limit is applied to each individual document that is not properly furnished. Thus, if a U.S. person fails to furnish 3 forms during a given year, a per-form penalty limit will be applied for each individual form. There will be 3 separate penalty limits.

Other penalty limits in the Code, are imposed on a per-year basis. This means that a single penalty limit is applied to any year where there is a failure to furnish required information. The penalty limit is applied just once for any given year where a failure occurs, regardless of how many individual failures occur during that year. Thus, there will be only a single penalty limit for a given year, regardless of whether a U.S. person fails to properly furnish 1 form or 10 forms during that year.

Generally, the statutory provisions of the Code expressly indicate when a penalty limit is to be applied on a per-form or per-year basis. For example, I.R.C. § 6721(a)(1) imposes a penalty on a per-form basis, and a penalty limit on a per-year basis, for each individual failure to timely and adequately file correct information returns with the Secretary. *See* I.R.C. § 6721(a)(1) ("In the case of a failure described in paragraph (2) by any person with respect to an information return, such person shall pay a penalty of $250 *for each return* with respect to which such failure occurs, but the total amount imposed on such person for all such failures *during any calendar year* shall not exceed $3,000,000.").

Similarly, I.R.C. § 6722(a)(1) imposes a penalty on a per-form basis, and a penalty limit on a per year basis, for each individual failure to timely and adequately furnish a correct payee statement to the Secretary. *See* I.R.C. § 6722(a)(1) ("In the case of each failure described in paragraph (2) by any

person with respect to a payee statement, such person shall pay a penalty of $250 *for each statement* with respect to which such failure occurs, but the total amount imposed on such person for all such failures *during any calendar year* shall not exceed $3,000,000.").

The IRS has assessed $600,000 in penalties against AVX under I.R.C. § 6038B. In reaching this total, the IRS erroneously applied the penalty limit of $100,000 on a per-form basis, to each of the 6 individual Agreements that the IRS asserts that AVX failed to timely file. But, unlike the penalties referenced above for failure to properly file an information return or a payee statement, which expressly indicate that the corresponding penalties and penalty limits are to be applied on a per-form or per-year basis, no such language is found in I.R.C. § 6038B. Instead, I.R.C. § 6038B indicates that the penalty limit is to be applied on a "per-exchange" basis. *See* I.R.C. § 6038B(c)(3) ("The penalty under paragraph (1) *with respect to any exchange* shall not exceed $100,000 unless the failure *with respect to such exchange* was due to intentional disregard.")

The Treasury Regulations further support applying the I.R.C. § 6038B penalty on a per-exchange basis. For certain transfers to foreign corporations, Treasury Regulation § 1.6038B-1(f) details the reporting requirements and potential penalties associated with noncompliance. The Treasury Regulation indicates if the U.S. transferor does not intentionally disregard its obligations, the penalty for failure to comply under I.R.C. § 6038B "in no event shall" exceed $100,000 with *respect to a given exchange*. *See* Treasury Regulation § 1.6038B-1(f) ("If a U.S. person is required to file a notice . . . and fails to comply with the applicable requirements of section 6038B . . ., then with respect to the particular property as to which there was a failure to comply — (i) The U.S. person shall pay a penalty under section 6038B(b)(1) . . ., but in no event shall the penalty exceed $100,000 unless the failure *with respect to such exchange* was due to intentional disregard.").

Similarly, for certain transfers to foreign partnerships, Treasury Regulation § 1.6038B-2(h) details the reporting requirements and potential penalties associated with noncompliance. The Treasury Regulation limits the penalty for failure to comply *"with respect to a particular transfer"* to $100,000, barring intentional disregard. *See* Treasury Regulation § 1.6038B-2(h) ("If a United States person is required to file a return . . . and fails to comply with the reporting requirement of section 6038B . . ., — (i)

The United States person is subject to a penalty . . . Such penalty *with respect to a particular transfer* is limited to $100,000, unless the failure to comply *with respect to such transfer* was due to intentional disregard."). While this Treasury Regulation does not apply to the AVX Group's exchange at issue,[5] it is illustrative of how the I.R.C. § 6038B penalty is applied on a per-exchange basis.

Because AVX did not intentionally disregard its filing obligations, the maximum penalty it can be subject to is $100,000 per exchange. On March 12, 2012, as part of the overall plan to implement a European holding company structure, the AVX Group was involved in an integrated exchange which was subject to the information reporting requirements of I.R.C. § 6038B. This integrated exchange was the transfer by AVX and AVX Development, pursuant to I.R.C. § 351, of 89.1% and 0.9%, respectively, of Elco, to AVX CV. Thus, the maximum penalty that AVX can be subject to under I.R.C. § 6038B is $100,000. The IRS erred in applying the I.R.C § 6038B penalty limit on a per-form as opposed to a per-exchange basis. Thus if it determined that AVX is subject to penalties, the maximum amount it can be liable for is far less than the $600,000 the IRS has currently assessed.

### B. No Penalties Can be Imposed because AVX's Failure to Furnish the Agreements Was Attributable to Reasonable Cause and Not to Willful Neglect.

AVX has a long history of meeting its tax return filing obligations and disclosure deadlines. With regards to the Reorganization of Elco, even though AVX failed to timely file the Agreements, it did file all tax returns, make any and all required tax payments, and fully disclose any matters that had any impact on AVX's overall tax liability, by the required deadlines. The 3 Agreements that AVX failed to timely submit were information-only documents, and the failure to timely submit them resulted in no loss of revenue or tax harm to the government.

AVX made a good faith effort to meet its tax filing obligations as defined by the Code. And upon discovering its mistake, AVX exercised ordinary business care and prudence in seeking to promptly correct its failure. AVX's delayed filing was not due to a willful intent to disobey the

---

[5] The transfers by AVX and AVX Development of their respective interests in Elco were made to AVX CV, a foreign corporation for US tax purposes.

taxing statutes. Instead, it was caused by unusual and significant changes that occurred within AVX's Corporate Tax Department in the time period leading up to the Reorganization of Elco. This included the hiring of a new Corporate Tax Director, Mr. Artus, who had very limited experience in the international tax arena. And compounding Mr. Artus' inexperience, AVX experienced 100% turnover in its Corporate Tax Department in the year leading up to the Reorganization of Elco. The challenges brought on by these major changes forced AVX to rely, more so than usual, on its tax advisor, PwC, for assistance with its tax compliance. And ultimately, this contributed to procedural misunderstandings and AVX's failure to timely file the Agreements.

However, when AVX initially learned of its failure to include a GRA with its original 2012 Corporate Tax Return, it attempted to correct the issue by promptly filing an Amended Corporate Tax Return with the IRS. Aware of the complexity of the Reorganization of Elco and the limitations and inexperience of its Corporate Tax Department at that time, AVX again pursued and heavily relied on PwC, a reputable major public accounting firm, to assist with correcting its error. But, contrary to AVX's understanding of the deliverables PwC was to prepare and provide, AVX never received a final completed copy of the GRA back from PwC. Thus, the GRA was again mistakenly omitted from the first Amended Corporate Tax Return filing.

Lacking personnel with experience in this type of international transaction, AVX did not become aware of its mistake until the audit of the AVX Group in 2016. Upon learning of its failure to file the required GRA, AVX immediately inquired of the IRS agents conducting the audit as to what it needed to do to correct its error. Per the agents' instructions, AVX had PwC prepare and furnish final copies of the Agreements, which AVX then promptly filed with its Amended Corporate Tax Returns. Because AVX at all times acted responsibly regarding its filing obligations, its failure to timely file the Agreements was due to reasonable cause and not to willful neglect. Therefore, AVX cannot be assessed penalties under I.R.C. § 6038B of the Code.

The IRS has assessed penalties of $600,000 pursuant to I.R.C. § 6038B for AVX's failure to furnish the required Agreements for tax years 2012 through 2014. However, the Code and Treasury Regulations bar the imposition of penalties where the failure to furnish the required information

is due to *reasonable cause and not to willful neglect.*  Specifically, the Code provides: "Paragraph (1) (imposing a penalty for failure to furnish required information) shall not apply to any failure if the United States person shows such failure is due to *reasonable cause and not to willful neglect.*"  I.R.C. § 6038B(c)(2).

Additionally, Treasury Regulations promulgated under I.R.C. § 6038B provide that a failure shall be deemed not to have occurred if the U.S. transferor is able to demonstrate that the failure was *due to reasonable cause and not willful neglect.  See* Treas. Reg. § 1.6038B-1(f)(3)(i).  Whether a failure to timely comply was due to reasonable cause and not to willful neglect is determined by the Director of Field Operations, Cross Border Activities Practice Area of Large Business & International (Director) based on all the facts and circumstances.  *Id.*

While neither the Code nor the Treasury Regulations define what constitutes sufficient reasonable cause to fall under the exception to the penalties, generally accepted standards for relief from tax penalties and additions to tax are informative, and thus should be considered.  In determining whether a failure to file is due to reasonable cause and not to willful neglect, the Internal Revenue Manual (the "IRM") sets forth standards for reasonable cause relief.  IRM 20.1.1.2.1(6) states that "[c]ompliance is achieved when a taxpayer makes a good faith effort to meet the tax obligations defined by the Code."  In addition, IRM 20.1.1.3.2(1) states that a "taxpayer may establish reasonable cause by providing facts and circumstances showing that they exercised ordinary business care and prudence (taking that degree of care that a reasonably prudent person would exercise), but nevertheless were unable to comply with the law."  IRM 20.1.1.3.2.2.6(4) states that "the taxpayer may have reasonable cause for non-compliance due to ignorance of the law if: (a) A reasonable and good faith effort was made to comply with the law, or (b) The taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement."  IRM 4.75.22.4.2(11) states that "[a] penalty relief statement is acceptable if it: (i) appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return, and (ii) clearly indicates no willful intent to disobey the taxing statutes."

Additionally, a reasonable cause standard is also used to evaluate penalty waivers under other sections of the Code.  Treasury Regulations promulgated under I.R.C. § 6724 provide that penalties are waived for

reasonable cause only if the filer establishes (i) significant mitigating factors with respect to the failure, or (ii) the failure arose from events beyond the filer's control. *See* Treas. Reg. § 301.6724-1(a)(2)(i) & (ii). In addition, the filer must establish that it acted "in a responsible manner . . . both before and after the failure occurred." *Id.* § 301.6724-1(a)(2).[6] Pursuant to the Treasury Regulations, acting in a responsible manner requires filers to exercise "reasonable care, which is the standard of care a reasonably prudent person would use under the circumstances in the course of its business." *See Id.* § 301.6724-1(d)(1)(i).

The Reorganization of Elco took place on March 12, 2012. At that time, AVX had recently employed a new Director of Taxes, Mr. Artus. While Mr. Artus is a Certified Public Accountant with over 25 years of experience in tax compliance, the positions he held before becoming AVX's Director of Taxes had been with smaller domestic public and private companies that did not have the extensive international operations of AVX. He had limited international tax experience prior to becoming the Director of Taxes, with his prior experience being predominately in domestic tax compliance and tax accounting. His only previous international tax experience had been in preparation of basic information returns. Prior to taking on the position of Director of Taxes at AVX, Mr. Artus had never worked with the transfer of a foreign subsidiary to another member of the same corporate group.

Compounding the challenges associated with employing a new Director of Taxes, AVX experienced 100% turnover in its Corporate Tax Department in the year leading up to the Reorganization of Elco. AVX was well aware of its limitations with regards to U.S. tax compliance for this complex international transaction. Thus, AVX was forced to heavily rely on its outside tax advisor, PwC, to make sure it was fully compliant. Per communications with PwC, Mr. Artus was under the impression that PwC

---

[6] Similarly, the IRM provides that "[p]enalty relief may be appropriate if the taxpayer exercised ordinary care and prudence, but due to circumstances beyond the taxpayer's control, they were unable to comply with the law." I.R.M. § 20.1.1.3.2.2(3). Pursuant to the IRM, "[r]easonable cause is based on all facts and circumstances in each situation." I.R.M. § 20.1.1.3.2(1). For those penalties where reasonable cause can be considered, "any reason" which establishes that the taxpayer exercised ordinary business care but was unable to comply, will be considered. *Id.* § 20.1.1.3.2(3)(a).

would assist and advise AVX regarding all tax compliance elements of the Reorganization of Elco. AVX expected, and was under the impression, that PwC would prepare and provide to AVX final completed copies of all required tax documents related to the Reorganization of Elco. AVX would then be responsible for submitting these documents with its Corporate Tax Returns.

These expectations were based on a Legal Steps Plan provided to AVX by Allen & Overy, Netherlands counsel whom PwC was working with, which indicated that Allen & Overy and PwC would be responsible for all the actions associated with the Reorganization of Elco. *See* Exhibit 6 (Allen & Overy, LLP, Legal Steps Plan), pg. 7, Item number 15. Additionally, PwC had provided AVX with a Work-Plan prior to consummation of the overall plan to implement a European holding company structure.

But the Work-Plan was very limited in the detail it provided, and was missing information under most of the column headings. While it listed AVX as the "Resource" next to the step of preparing and filing a gain recognition agreement for the Reorganization of Elco, it failed to specifically reference the preparation or filing of a GRA in the Documentation section. *See* Exhibit 7 (PwC Work-Plan), Step 3.4 & Section 8. All that was mentioned in the Documentation section was a broad indication that PwC would prepare required reorganization statements for Forms 5471. *See Id.*, Step 8.3. The Work-Plan also contradicted Allen & Overy's Legal Steps Plan which indicated that Allen & Overy and PwC would be responsible for all actions associated with the Reorganization of Elco.

The lack of detail in the Work-Plan, and contradictory language between it and the Legal Steps Plan, created confusion, and ultimately led to AVX's delinquent filings. Based on the materials AVX was provided from its advisors, it was unclear and hard to determine which tasks AVX was responsible for and which tasks would be handled externally. Given the circumstances and status of its Corporate Tax Department, AVX reasonably believed that even if it was ultimately going to be responsible for furnishing the Corporate Tax Returns to the IRS, PwC would at the very least remind Mr. Artus of any filings that needed to be included prior to the due date.

But in contrast, due to the lack of clarity provided in its Work-Plan, PwC was under the impression that it was not engaged to prepare and

complete the GRA, and that AVX understood it must prepare and file this document. PwC assumed that AVX would complete the GRA as part of AVX Group's annual tax compliance work for the 2012 tax year. Accordingly, PwC did not inquire of Mr. Artus, or of anyone else at AVX, prior to December 15, 2012, as to whether AVX had prepared, and was planning to file, the GRA with its 2012 Corporate Tax Return. As a result of this procedural misunderstanding, when AVX timely filed its initial 2012 Corporate Tax Return, it was unaware that the GRA needed to be included, and thus omitted it from the filing.

As soon as AVX was informed of its mistake, it asked PwC to prepare and furnish a final completed copy of the GRA so that AVX could submit it with a 2012 Amended Corporate Tax Return. PwC sent draft copies of the GRA to AVX which AVX then returned to PwC with comments. However, AVX never received an edited final copy of the GRA back from PwC. When AVX promptly submitted its first Amended Corporate Tax Return on March 13, 2013, including certain other disclosures for tax year 2012 which AVX had mistakenly omitted, the GRA was mistakenly not included.

Although it failed to timely furnish the GRA, and later the GRA ACs, AVX made a good faith effort to meet its tax obligations defined by the Code. *See* IRM 20.1.1.2.1(6) ("Compliance is achieved when a taxpayer makes a good faith effort to meet the tax obligations defined by the Code."). AVX possessed no willful intent to disobey the taxing statutes. *See* IRM 4.75.22.4.2(11) ("A penalty relief statement is acceptable if it: (i) appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return, and (ii) clearly indicates no willful intent to disobey the taxing statutes.") AVX timely filed all returns and disclosures that had any bearing on its tax liability for tax years 2012 through 2014 by the required deadlines. The Agreements it failed to timely submit were all information-only documents which caused no loss of revenue or tax harm to the government.

AVX exercised ordinary business care and prudence in attempting to fully comply with its tax filing obligations. *See* IRM 20.1.1.3.2(1) ("A taxpayer may establish reasonable cause by providing facts and circumstances showing that they exercised ordinary business care and prudence (taking that degree of care that a reasonably prudent person would exercise), but nevertheless were unable to comply with the law.") Faced

with a complex international transaction, it was sensible for AVX to enlist the help of a reputable major public accounting firm. And given the challenging circumstances within its Corporate Tax Department around the time of the Reorganization of Elco, it was reasonable for AVX to heavily rely on PwC to prepare and furnish all the necessary tax documents for tax compliance purposes.

While AVX was initially unaware of its obligation to file a GRA for tax year 2012, AVX made a good faith effort to comply with its filing obligations by enlisting the assistance PwC. *See* IRM 20.1.1.3.2.2.6(4) ("The taxpayer may have reasonable cause for non-compliance due to ignorance of the law if: (a) A reasonable and good faith effort was made to comply with the law, or (b) The taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement."). AVX acted in a responsible manner both before and after the failure to timely file occurred. *See* Treas. Reg. § 301.6724-1(a)(2)(i) & (ii) (In addition, the filer must establish that it acted "in a responsible manner . . . both before and after the failure occurred."). As soon as it became aware of the omissions, AVX took significant steps to try and remediate the issue.

AVX's actions, as detailed above, demonstrate reasonable cause and the absence of a willful failure to timely file the required Agreements. AVX's Corporate Tax Department faced challenging circumstances around the time of the Reorganization of Elco, and as such, AVX attempted, as best it could, to be fully compliant with the tax laws by engaging PwC to advise and assist it. AVX fully intended, and in good-faith believed, that its original filings, and later amendments, satisfied all of its tax reporting obligations related to the Reorganization of Elco.

Accordingly, AVX respectfully requests that the IRS find that its failure to timely comply was due to reasonable cause and not to willful neglect, and accordingly, under the Treasury Regulations, that such failure is deemed not to have occurred. Given the circumstances and complex nature of the Reorganization of Elco, AVX satisfied the reasonable cause exception of I.R.C. § 6038B(c)(2), and thus no penalty for failure to comply under can be assessed.

### C. The Assessed Penalties Violate the U.S. Constitution's Prohibition Against Excessive Fines.

The Eighth Amendment to the U.S. Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."     U.S. Const., Amdt. 8 (the "Excessive Fines Clause").   At the time the Constitution was adopted, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense."  *United States v. Bajakajian*, 524 U.S. 321, 327-28, (1998) (*citing Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)).  The Excessive Fines Clause thus "limits the government's power to extract payments, whether in cash or in kind, '*as punishment for some offense.*'"  *Austin v. United States*, 509 U.S. 602, 609-610 (1993) (*citing Browning-Ferris*, 524 U.S.)

I.R.C. § 6038B(a)(1) requires that when a United States person transfers property to a foreign entity, certain information, as prescribed by the Secretary, has be reported with that person's tax return.  If however, a United States person fails to timely furnish such information, that person shall pay a penalty equal to 10% of the fair market value of the property at the time of the exchange.  *See* I.R.C. § 6038B(c)(1).  The penalty for any given exchange is limited to $100,000 unless the failure to comply was due to intentional disregard.  *See* I.R.C. § 6038B(c)(3).

However, these penalties apply regardless of the resulting tax harm, if any, caused by the failure to furnish the required information.  Any delay, no matter how long in time, in furnishing the required information to the Secretary, causes no revenue loss or tax harm to the government.  Had AVX timely furnished the Agreements, it would not have been required to recognize any taxable gain.   And similarly, even when AVX actually furnished the Agreements delinquently, the IRS determined that AVX was not required to recognize any taxable gain on the transaction.  *See* Exhibit 3 (IRS Letters 4861, IRS Determination That AVX's Failure to File Wasn't Willful); *See also* Treas. Reg. § 1.367(a)-8(p) ("A failure to file or failure to comply will be deemed to not have occurred for purposes of recognizing gain under I.R.C. § 367(a)(1) . . . if the U.S. transferor demonstrates that the failure was not willful.").  Essentially, for AVX's tax liability purposes, there was no difference between a timely filing and a delayed filing of the Agreements.  Accordingly, the IRS has not alleged that it suffered any harm as a result of AVX's failure to file the Agreements until 2016.

The proposed penalties, therefore, bear no relationship to the tax harm suffered by the government, and constitute punishment for the proscribed

conduct. *See United States v. Alt*, 83 F.3d 779, 782 (civil penalties constitute punishment where they do not "remotely approximate" the government's loss).[7]  The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: the amount of the penalty must bear some relationship to the gravity of the offense that it is designed to punish. *See Austin*, 509 U.S. at 622-623 ("[T]he government is exacting too high a penalty in relation to the offense committed.").  A punitive fine, penalty, or forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the offense committed.  *See Bajakajian*, 524 U.S. at 334.

In considering the gravity of AVX's violation, it is important to recognize that AVX did not intentionally fail to timely furnish the Agreements with the IRS.  AVX possessed no tax avoidance motive, and timely filed all returns and disclosures that had any bearing on its tax liability by the required deadlines.  AVX's submission of the Agreements to the IRS was delayed because of the unusual and significant changes in its Corporate Tax Department around the time the Agreements were initially due, and because of a good-faith misunderstanding between AVX and its outside tax advisor, PwC.

To punish AVX for these late submissions, the IRS has assessed I.R.C. § 6038B penalties in the amount of $600,000 against AVX.  Yet the IRS can point to no revenue loss or harm caused by these delayed filings.  By way of comparison, when the IRS asserts a taxpayer has engaged in fraud, the statutory maximum penalty that can be imposed is 75% of the tax loss.  *See* I.R.C. § 6663(a).  In contrast, in this matter, AVX is facing a

---

[7] Even if a civil penalty serves some remedial purpose, it constitutes a punishment if it also serves either as a deterrent to, or as retribution for, the proscribed conduct.  *See Austin*, 509 F.3d at 610 ("[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.") (*quoting United States v. Halper*, 490 U.S. 435 (1989)); *see also*, *United States v. Alt*, 83 F.3d 779, 781 (6th Cir. 1996); *United States v. Morgan*, 51 F.3d 1105, 1115 (2d Cir. 1995) (a penalty may be "so divorced from the reality of what the government suffered in damages and expenses as to constitute punishment") (*citing Halper*, 490 U.S. at 449).

substantial penalty of $600,000, which is infinitely greater than the non-existent tax loss to the government.

The U.S. Supreme Court's decision and analysis in *Bajakajian*, confirms that the assessed penalties in this matter are unconstitutionally excessive. In *Bajakajian*, an individual failed to report $357,144 of currency he was attempting to export from the United States, as required by federal law. *See Bajakajian*, 524 U.S. at 325. The government imposed a forfeiture penalty of $357,144 — the full amount of the unreported currency. *Id*. In its analysis, the Court considered that the only violation at issue was a reporting offense, that the violation was unrelated to any other improper or illegal activities, and that the harm caused by the failure to report was minimal. *See Id*. at 338-339. In holding the penalty unconstitutionally excessive, the Court concluded that the amount of the penalty was "grossly disproportional to the gravity of [the] offense . . . and it [bore] no articulable correlation to any injury suffered by the Government." *Id*. at 339-340.

In this matter, similar to the facts in *Bajakajian*, AVX is facing substantial penalties based solely on the delayed submission of 3 information-only Agreements. This mistake was made in good faith and was not related to any other "improper or illegal activities." Instead, it was caused by challenging circumstances within AVX's Corporate Tax Department and a procedural misunderstanding with AVX's outside tax advisor. Consistent with AVX's strong record of tax compliance, the IRS has not alleged any other errors or omissions. Moreover, as set forth above, any harm caused by the delayed submission is nonexistent, and once AVX became aware of the issues, it diligently worked with its outside tax advisor, PwC, to promptly rectify and mitigate any harm. As in *Bajakajian*, the penalties the IRS seeks to impose against AVX are "grossly disproportional" to the gravity of the alleged violation, and they bear "no articulable correlation to any injury suffered by the Government." The penalties assessed by the IRS, therefore, violate the constitutional prohibition against excessive fines.

## IV.  CONCLUSION

AVX's failure to timely file its Agreements was not the result of intentional disregard of its filing obligations. Thus, even if it is determined that AVX is subject to penalties under I.R.C. § 6038B, the maximum amount that can be assessed is $100,000, far less than the $600,000 which

the IRS has currently assessed. *See* I.R.C. § 6038B(c)(3) (absent intentional disregard, the penalty limit is $100,000 *per exchange*, and the AVX Group was only involved in a single integrated exchange subject to the reporting requirements of I.R.C. § 6038B as part of its overall plan to implement a European holding company structure). Furthermore, AVX's failure to timely file its Agreements was due to reasonable cause and not to willful neglect. Thus, no I.R.C. § 6038B penalties can be imposed. *See* I.R.C. § 6038B(c)(2) ("Paragraph (1) (penalties for failure to furnish required information) shall not apply to any failure if the United States person shows such failure is due to *reasonable cause and not willful neglect.*). And lastly, the current assessment by the IRS of $600,000 in penalties against AVX is grossly disproportionate to the harm, if any, caused by AVX's failure to timely furnish the 3 information-only Agreements. The penalties, therefore, violate the Excessive Fines Clause of the U.S. Constitution. *See* U.S. Const., Amdt. 8 (prohibiting excessive fines).

As such, AVX respectfully requests prompt reconsideration of the assessed penalties and a refund of $600,000 plus accrued interest.

# EXHIBIT LIST

AVX Corporation
EIN: ▮▮▮▮▮▮▮
Explanation Statement to IRS Forms 843 (2012-2014)

Exhibit 1: IRS Notices CP215 for Tax Years 2012, 2013, and 2014 (December 18, 2017), and IRS Form 886-A, Explanation of Items (October 12, 2017)

Exhibit 2:  IRS Form 2848, Power of Attorney

Exhibit 3:  IRS Letters 4861, IRS Determination That AVX's Failure to File Was Not Willful (October 12, 2017)

Exhibit 4:  IRS Form 4564, Information Document Request (December 21, 2015)

Exhibit5:  AVX's Amended Tax Returns for 2012, 2013, and 2014 (submitted May 2, 2016)

Exhibit 6:  Allen & Overy, LLP, Legal Steps Plan (October 14, 2011)

Exhibit 7:  PwC Work-Plan (September 16, 2011)

Exhibit 8:  IRS Notice CP138 (improperly applying $600,000 of the refund due AVX for tax year ended March 31, 2017 to the I.R.C. § 6038B penalties assessed)

Exhibit 9: Return receipt confirmation of AVX's submission of its formal protest to the IRS on 01/11/18 and follow-up correspondence with Revenue Agent J. Rowena Cheek on 03/09/19 regarding status of submission

# EXHIBIT 1



Department of the Treasury
Internal Revenue Service
Ogden UT  84201-0039

IRS

| Notice | CP215 |
|---|---|
| Tax period | March 31, 2012 |
| Notice date | December 18, 2017 |
| Employer ID number | |
| To contact us | Phone 1-800-829-0115 |
| Page 1 of 2 | |

005090.814358.428386.18589 1 MB 0.423 540

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039



005090

## We Charged You a Penalty                    676

We charged you a penalty under Section 6038b of the Internal Revenue Code for the following reason:

Failure to File Form 926 and/or Form 8865 Schedule O

Tax Statement

| | |
|---|---|
| Prior Balance | $0.00 |
| Penalty Assessment | $200,000.00 |
| Interest | $0.00 |
| Other Charges | $0.00 |
| Total Amount You Owe | $200,000.00 |

Continued on back...

IRS

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039

| Notice | CP215 |
|---|---|
| Notice date | December 18, 2017 |
| Employer ID number | |

## Payment

- Make your check or money order payable to the United States Treasury.
- Write your Employer ID number (         ) the tax period (March 31, 2012), and the form number (CVL PEN) on your payment and any correspondence.

INTERNAL REVENUE SERVICE
OGDEN UT  84201-0039

**Amount due by**
**January 5, 2018**

$200,000.00

330379007 SH AVXC 13 2 201203 670 00020000000

| Notice | CP215 |
|---|---|
| Tax period | March 31, 2012 |
| Notice date | December 18, 2017 |
| Employer ID number | |

Page 2 of 2

We charged you a penalty under IRC Section 6038B(c) for each annual accounting period in which you failed to timely furnish complete and correct information regarding transfers and distributions defined under IRC Section 6038B(a).

The penalty under IRC Section 6038B(c) is 10 percent of the fair market value of the property at the time of each transfer or exchange, not to exceed $100,000. When the failure is due to intentional disregard, the $100,000 maximum limitation does not apply. Also, in the case of property transferred as a contribution defined under IRC Section 6038B(a)(1)(B), the fair market value of the property at the time of the contribution is considered the sale price and any gain fully recognized.

IRC Section 6038B relates to Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation, and/or Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships, Schedule O, Transfers of Property to a Foreign Partnership.

If you agree with the assessment of this penalty, please pay the balance due within ten (10) days from the date of this notice.

If you are entitled to and elected the Accelerated Appeals Consideration as described in IRM 8.11.5.2, there is nothing you need to do at this time. An Appeals office representative will contact you to resolve your case. Accelerated Appeals Consideration applies to taxpayers with assets totaling $100 million or more.

If you do not wish to appeal this penalty, you may later dispute the penalty by paying the penalty and then filing a claim.

If you wish to appeal this penalty, send the IRS at the address shown on page 1 of this notice a written request to appeal within 30 days from the date of this notice. Your request should include any explanation and documents that will support your position. Your explanation should reflect all facts that you contend are reasonable cause for not asserting this penalty.

For tax forms, instructions, and information, visit **www.irs.gov**. (Access to this site will not provide you with specific taxpayer account information.)


IRS

**Contact information**

INTERNAL REVENUE SERVICE
OGDEN UT 84201-0039

330379007 SH        13 2 201203

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN SC 29644-9039

| Notice | CP215 |
|---|---|
| Notice date | December 18, 2017 |
| Employer ID number | |

If your address has changed, please call 1-800-829-0115 or visit www.irs.gov.
☐ Please check here if you've included any correspondence. Write your Employer ID number (            the tax period (March 31, 2012), and the form number (CVL PEN) on any correspondence.

| | ☐ a.m. ☐ p.m. | | ☐ a.m. ☐ p.m. |
|---|---|---|---|
| Primary Phone | Best time to call | Secondary Phone | Best time to call |



Department of the Treasury
Internal Revenue Service
Ogden UT 84201-0039

**IRS**

| Notice | CP215 |
|---|---|
| Tax period | March 31, 2013 |
| Notice date | December 18, 2017 |
| Employer ID number | |
| To contact us | Phone 1-800-829-0115 |
| Page 1 of 2 | |

005089.814358.428386.18589 1 MB 0.423 540

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039



)05089

## We Charged You a Penalty                    676

We charged you a penalty under Section 6038b of the Internal Revenue Code for the following reason:

Failure to File Form 926 and/or Form 8865 Schedule O

Tax Statement

| | |
|---|---:|
| Prior Balance | $0.00 |
| Penalty Assessment | $200,000.00 |
| Interest | $0.00 |
| Other Charges | $0.00 |
| Total Amount You Owe | $200,000.00 |

Continued on back...

**IRS**

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039

| Notice | CP215 |
|---|---|
| Notice date | December 18, 2017 |
| Employer ID number | |

## Payment

- Make your check or money order payable to the United States Treasury.
- Write your Employer ID number (          ) the tax period (March 31, 2013), and the form number (CVL PEN) on your payment and any correspondence.

INTERNAL REVENUE SERVICE
OGDEN UT  84201-0039

**Amount due by**
**January 5, 2018**

$200,000.00

330379007 SH AVXC 13 2 201303 670 00020000000

| Notice | CP215 |
| --- | --- |
| Tax period | March 31, 2013 |
| Notice date | December 18, 2017 |
| Employer ID number | |
| Page 2 of 2 | |

We charged you a penalty under IRC Section 6038B(c) for each annual accounting period in which you failed to timely furnish complete and correct information regarding transfers and distributions defined under IRC Section 6038B(a).

The penalty under IRC Section 6038B(c) is 10 percent of the fair market value of the property at the time of each transfer or exchange, not to exceed $100,000.  When the failure is due to intentional disregard, the $100,000 maximum limitation does not apply. Also, in the case of property transferred as a contribution defined under IRC Section 6038B(a)(1)(B), the fair market value of the property at the time of the contribution is considered the sale price and any gain fully recognized.

IRC Section 6038B relates to Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation, and/or Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships, Schedule O, Transfers of Property to a Foreign Partnership.

If you agree with the assessment of this penalty, please pay the balance due within ten (10) days from the date of this notice.

If you are entitled to and elected the Accelerated Appeals Consideration as described in IRM 8.11.5.2, there is nothing you need to do at this time.  An Appeals office representative will contact you to resolve your case.  Accelerated Appeals Consideration applies to taxpayers with assets totaling $100 million or more.

If you do not wish to appeal this penalty, you may later dispute the penalty by paying the penalty and then filing a claim.

If you wish to appeal this penalty, send the IRS at the address shown on page 1 of this notice a written request to appeal within 30 days from the date of this notice.  Your request should include any explanation and documents that will support your position.  Your explanation should reflect all facts that you contend are reasonable cause for not asserting this penalty.

For tax forms, instructions, and information, visit www.irs.gov.  (Access to this site will not provide you with specific taxpayer account information.)



IRS

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039

| Notice | CP215 |
| --- | --- |
| Notice date | December 18, 2017 |
| Employer ID number | |

**Contact information**

If your address has changed, please call 1-800-829-0115 or visit www.irs.gov.
☐ Please check here if you've included any correspondence.  Write your Employer ID number (                    ) the tax period (March 31, 2013), and the form number (CVL PEN) on any correspondence.

| | | ☐ a.m. | | ☐ a.m. |
| | | ☐ p.m. | | ☐ p.m. |
| Primary Phone | Best time to call | Secondary Phone | Best time to call |

INTERNAL REVENUE SERVICE
OGDEN  UT  84201-0039

330379007 SH        13 2 201303



Department of the Treasury
Internal Revenue Service
Ogden UT 84201-0039

| Notice | CP215 |
| --- | --- |
| Tax period | March 31, 2014 |
| Notice date | December 18, 2017 |
| Employer ID number | |
| To contact us | Phone 1-800-829-0115 |
| Page 1 of 2 | |

005088.814358.428386.18589 1 MB 0.423 540

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039

)05088

## We Charged You a Penalty                    676

We charged you a penalty under Section 6038b of the Internal Revenue Code for the following reason:

Failure to File Form 926 and/or Form 8865 Schedule O

Tax Statement

| | |
| --- | --- |
| Prior Balance | $0.00 |
| Penalty Assessment | $200,000.00 |
| Interest | $0.00 |
| Other Charges | $0.00 |
| Total Amount You Owe | $200,000.00 |

Continued on back...



AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039

| Notice | CP215 |
| --- | --- |
| Notice date | December 18, 2017 |
| Employer ID number | 33-0379007 |

## Payment

- Make your check or money order payable to the United States Treasury.
- Write your Employer ID number          the tax period (March 31, 2014), and the form number (CVL PEN) on your payment and any correspondence.

INTERNAL REVENUE SERVICE
OGDEN UT  84201-0039

Amount due by
**January 5, 2018**

$200,000.00

330379007 SH AVXC 13 2 201403 670 00020000000

| Notice | CP215 |
|---|---|
| Tax period | March 31, 2014 |
| Notice date | December 18, 2017 |
| Employer ID number | |
| Page 2 of 2 | |

We charged you a penalty under IRC Section 6038B(c) for each annual accounting period in which you failed to timely furnish complete and correct information regarding transfers and distributions defined under IRC Section 6038B(a).

The penalty under IRC Section 6038B(c) is 10 percent of the fair market value of the property at the time of each transfer or exchange, not to exceed $100,000. When the failure is due to intentional disregard, the $100,000 maximum limitation does not apply. Also, in the case of property transferred as a contribution defined under IRC Section 6038B(a)(1)(B), the fair market value of the property at the time of the contribution is considered the sale price and any gain fully recognized.

IRC Section 6038B relates to Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation, and/or Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships, Schedule O, Transfers of Property to a Foreign Partnership.

If you agree with the assessment of this penalty, please pay the balance due within ten (10) days from the date of this notice.

If you are entitled to and elected the Accelerated Appeals Consideration as described in IRM 8.11.5.2, there is nothing you need to do at this time. An Appeals office representative will contact you to resolve your case. Accelerated Appeals Consideration applies to taxpayers with assets totaling $100 million or more.

If you do not wish to appeal this penalty, you may later dispute the penalty by paying the penalty and then filing a claim.

If you wish to appeal this penalty, send the IRS at the address shown on page 1 of this notice a written request to appeal within 30 days from the date of this notice. Your request should include any explanation and documents that will support your position. Your explanation should reflect all facts that you contend are reasonable cause for not asserting this penalty.

For tax forms, instructions, and information, visit www.irs.gov. (Access to this site will not provide you with specific taxpayer account information.)



**IRS**

**Contact information**

INTERNAL REVENUE SERVICE
OGDEN UT 84201-0039

AVX CORPORATION
% EMILE-ARTUS
1 AVX BLVD
FOUNTAIN INN SC 29644-9039

| Notice | CP215 |
|---|---|
| Notice date | December 18, 2017 |
| Employer ID number | |

If your address has changed, please call 1-800-829-0115 or visit www.irs.gov.
☐ Please check here if you've included any correspondence. Write your Employer ID number (          ), the tax period (March 31, 2014), and the form number (CVL PEN) on any correspondence.

| | | | |
|---|---|---|---|
| | ☐ a.m. | | ☐ a.m. |
| | ☐ p.m. | | ☐ p.m. |
| Primary Phone | Best time to call | Secondary Phone | Best time to call |

330379007 SH        13 2 201403



**Department of the Treasury**
**Internal Revenue Service**
**Large Business & International Division**

Date:
10/12/2017
Person to contact:
J. Rowena Cheek
Contact address:
10715 David Taylor Dr., Charlotte NC
Contact telephone number:
(704) 548-4246
Contact fax number:
(855) 627-0554
Taxpayer year at issue:
201203

AVX Corporation
1 AVX Boulevard
Fountain Inn, SC 29644
Attn.: Emile Artus, Director of Tax

Notification of determination under Treasury Regulation Section 1.6038B-1(f)(3)

Dear Mr. Artus:

We've reviewed the request for relief submitted by AVX Corporation
March 31, 2012.

We've determined that AVX Corporation hasn't demonstrated that the failure to comply
was due to reasonable cause and not willful neglect with respect to the following documents:

Statement of Relief for Reasonable Cause Under Treas. Reg. §§ .1.6038B-1(f) and 1.6038B-1T(f) Relief for

Late Filed GRA Based on Reasonable Cause

If you have questions about this letter, you can contact the person above.

Sincerely,

Orrin D. Byrd

Director of Field Operations
Cross Border Activities Practice Area
Large Business & International Divsion

Letter 5812 (9-2016)
Catalog Number 66819D



**Department of the Treasury**
**Internal Revenue Service**
**Large Business & International Division**

Date:
10/12/2017
Person to contact:
J. Rowena Cheek
Contact address:
10715 David Taylor Dr., Charlotte NC
Contact telephone number:
(704) 548-4246
Contact fax number:
(855) 627-0554
Taxpayer year at issue:
201303

AVX Corporation
1 AVX Boulevard
Fountain Inn, SC 29644
Attn.: Emile Artus, Director of Tax

**Notification of determination under Treasury Regulation Section 1.6038B-1(f)(3)**

Dear Mr. Artus:

We've reviewed the request for relief submitted by AVX Corporation
March 31, 2013.

We've determined that AVX Corporation hasn't demonstrated that the failure to comply
was due to reasonable cause and not willful neglect with respect to the following documents:

Statement of Relief for Reasonable Cause Under Treas. Reg. §§ .1.6038B-1(f) and 1.6038B-1T(f) Relief for

Late Filed GRA Annual Certification

Based on Reasonable Cause.

If you have questions about this letter, you can contact the person above.

Sincerely,

Orrin D. Byrd

Director of Field Operations
Cross Border Activities Practice Area
Large Business & International Divsion

Letter 5812 (9-2016)
Catalog Number 68819D

 **Department of the Treasury**
**Internal Revenue Service**
**Large Business & International Division**

Date:
  10/12/2017
Person to contact:
  J. Rowena Cheek
Contact address:
  10715 David Taylor Dr., Charlotte NC
Contact telephone number:
  (704) 548-4246
Contact fax number:
  (855) 627-0554
Taxpayer year at issue:
  201403

AVX Corporation
1 AVX Boulevard
Fountain Inn, SC 29644
Attn.: Emile Artus, Director of Tax

**Notification of determination under Treasury Regulation Section 1.6038B-1(f)(3)**

Dear Mr. Artus:

We've reviewed the request for relief submitted by AVX Corporation
March 31, 2014.

We've determined that AVX Corporation hasn't demonstrated that the failure to comply
was due to reasonable cause and not willful neglect with respect to the following documents:

Statement of Relief for Reasonable Cause Under Treas. Reg. §§ .1.6038B-1(f) and 1.6038B-1T(f) Relief for

Late Filed GRA Annual Certification

Based on Reasonable Cause.

If you have questions about this letter, you can contact the person above.

Sincerely,

Orrin D. Byrd

Director of Field Operations
Cross Border Activities Practice Area
Large Business & International Divsion

Letter 5812 (9-2016)
Catalog Number 66818D

| Form 886-A<br>{REV JANUARY 1994} | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR EXHIBIT |
| --- | --- | --- |
| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
| AVX Corporation | | 201203 to 201403 |

| Tax Year | IRC Code Section | Penalties Assessed |
| --- | --- | --- |
| 201203 | IRC Sec 6038B Reasonable Cause | $200,000 |
| 201303 | IRC Sec 6038B Reasonable Cause | $200,000 |
| 201403 | IRC Sec 6038B Reasonable Cause | $200,000 |

### ISSUE:

Whether reasonable cause penalties under IRC Sec. 6038B will be assessed on AVX Corporation ("AVX" or "TP") for tax years 201203 through 201403?

### FACTS:

AVX is a U.S. corporation, 72% of which is owned by Kyocera Corp. AVX Corp. designs, manufactures, and distributes electronic components. AVX Corp.'s taxable year end is March 31. AVX Corp. wholly owns a U.S. subsidiary, AVX Development.

Upon advice of PwC, on March 8, 2012, AVX Corp. and AVX Development formed a Dutch partnership, AVX Koninkrijk de Netherlanden CV ("AVX CV"), which had elected to be treated as a corporation for U.S. tax purposes. On March 12, 2012, AVX Corp. contributed to AVX Development 0.9% of Elco Europe GmbH ("Elco GmbH"), a controlled foreign corporation. Also on March 12, 2012, AVX contributed 89.1% and AVX Development contributed 0.9% of Elco GmbH to AVX CV.

In December 2012, AVX Corp. filed its tax return for its year ended March 2012. The tax return did not include a Gain Recognition Agreement ("GRA"). In March 2013, AVX Corp. filed an amended income tax return for its taxable year ended March 2012. The amended return included Form 8838, Consent to Extend Time to Assess Tax under Section 367 – Gain Recognition Agreement. The 201203 amended return also included a "Statement of Reasonable Cause" under Temp. Treas. Reg. § 1.367(a)-8(p). The amended return did not include a GRA.

TP did not file Annual Certifications ("ACs") for 201303 and 201403 tax years.

In March 2015, the IRS began examining AVX Corp.'s 201303 and 201403 tax years. On December 15, 2015, the IRS requested a copy of AVX Corp.'s GRAs.

On May 3, 2016, AVX Corp. filed a second amended return for the tax year ended March 2012. The second amended tax return included the initial GRAs as well as statements of non-willful intent regarding the late-filed GRAs. The statements provide that, Emile Artus ("the Director of Taxes"), was unfamiliar with the GRA rules when AVX Corp. filed its 201203 tax return; that prior to this transaction, AVX Corp. had never

1

| Form **886-A**<br>(REV JANUARY 1994) | **EXPLANATION OF ITEMS** | | SCHEDULE NO. OR EXHIBIT | |
|---|---|---|---|---|
| NAME OF TAXPAYER | | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED | |
| AVX Corporation | | | 201203 to 201403 | |

been required to file a GRA; and although Mr. Artus has 25 years of experience as a CPA, nearly all of his experience regards domestic tax issues.

PwC provided AVX Corp. with a work plan regarding the Elco GmbH contribution. The work plan stated that AVX Corp. needed to prepare and file a GRA. Mr. Artus expected PwC to remind him of the filing although the work plan contains a "Documentation" section that did not list the GRA and also states that PwC will prepare reorganization statements required under Treas. Reg. § 1.351-3. PwC, however, expected AVX Corp. would file the GRAs.

In January 2013, PwC asked about the disclosures required with AVX Corp's 201203 tax return. Mr. Artus and PwC discovered that the GRAs had not been filed. AVX Corp. engaged PwC to prepare the disclosures in an amended tax return. Drafts were circulated but Mr. Artus has no record of receiving a final GRA from PwC.

Upon the IRS's examination of this issue, AVX Corp. filed the GRAs in May 2016 and provided a copy to the International Examiner ("IE").

## LAW:

IRC §6038B(a) describes that each United States person who transfers property to a foreign corporation in an exchange described in section 332, 351, 354, 355, 356, or 361, shall furnish to the Secretary, at such time and in such manner as the Secretary shall by regulations prescribe, such information with respect to such exchange or distribution as the Secretary may require in such regulations.

Treas. Reg. §1.6038B-1(b)(1) indicates that if the U.S. person files a statement under a gain recognition agreement under §1.367(a)-8, such person must comply in all material respects with the requirements of such section pursuant to the terms of the statement, gain recognition agreement, or liquidation document, as applicable, in order to satisfy a reporting obligation under section 6038B. For purposes of determining a U.S. transferor that is subject to section 6038B, the rules of §§1.367(a)-1T(c) and 1.367(a)-3(d) shall apply with respect to a transfer described in section 367(a).

Treas. Reg. §1.6038B-1(f) describes that if a U.S. person is required to file a notice (or otherwise comply) under paragraph (b) of this section and fails to comply with the applicable requirements of section 6038B and this section, then with respect to the particular property as to which there was a failure to comply—

(i) The U.S. person shall pay a penalty under section 6038B(b)(1) equal to 10 percent of the fair market value of the transferred property at the time of the exchange, but in no

2

| Form 886-A<br>(REV JANUARY 1994) | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>AVX Corporation | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED<br>201203 to 201403 |

event shall the penalty exceed $100,000 unless the failure with respect to such exchange was due to intentional disregard (described under paragraph (g)(4) of this section); and

(ii) The period of limitations on assessment of tax upon the transfer of that property does not expire before the date which is 3 years after the date on which the Secretary is furnished the information required to be reported under this section. See section 6501(c)(8) and any regulations thereunder.

Treas. Reg. §1.6038B-1T(f)(3) states that if the U.S. transferor is able to demonstrate the failure was due to a reasonable cause and not willful neglect, then the failure shall be deemed not to have occurred.

Treas. Reg. 1.6038B-1T(f)(3)(ii) describes the procedures for establishing that a failure to timely comply was due to reasonable cause and not willful neglect. Section (A) indicates the time of submission: A U.S. transferor's statement that the failure to timely comply was due to reasonable cause and not willful neglect will be considered only if, promptly after the U.S. transferor becomes aware of the failure, an amended return is filed for the taxable year to which the failure relates that includes the information that should have been included with the original return for such taxable year or that otherwise complies with the rules of this section, and that includes a written statement explaining the reasons for the failure to timely comply.

Treas. Reg. §1.367(a)-8(d)(1) describes the filing requirements of a GRA: An initial gain recognition agreement must be timely filed in order for the U.S. transferor to avoid recognizing gain under section 367(a)(1) with respect to the transferred stock or securities by reason of the applicable exceptions provided under §1.367(a)-3. Except as provided in paragraph (p) of this section, an initial gain recognition agreement is timely filed only if—

(i)      The initial gain recognition agreement and any other gain recognition agreement document required to be filed with the initial gain recognition agreement are included with a timely filed return of the U.S. transferor for the taxable year during which the initial transfer occurs; and

(ii)      Each gain recognition agreement document identified in paragraph (d)(1)(i) of this section is completed in all material respects.

3

| Form 886-A (REV JANUARY 1994) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
| AVX Corporation | | 201203 to 201403 |

## TAXPAYER'S POSITION:

### a.    Advisor Reliance

In TP's request for penalty relief under IRC Sec. 6038B, the first argument to be put forth is that AVX relied heavily on its professional advisor to review all GRA attachments and identify any shortcomings concerning that distinct part of the filing.

### b.    Promptly After Standard

TP indicated that in January 2013, after the original 201203 return was filed in December, PwC reached out to the TP asking whether the GRA was filed with the return. GRA questionnaires and valuation of transferred Elco shares were discussed between PwC and TP via emails (from 1/29/2013 through 3/14/2013).

### c.    Late Election

TP indicated in the second amended 201203 return "Statement of Relief for Reasonable Cause Under Treas. Reg. §1.6038B-1(f) and 1.6038B-1T(f)", page 18, "AVX also satisfies the purpose and rationale for late election relief."

## ANALYSIS – GOVERNMENT'S POSITION:

### a.    Advisor Reliance (TP Argument # 1)

An interview was conducted by IE on 6/2/16 to pinpoint key events in the timeline, and discuss surrounding circumstances and correspondence that may have existed to support this contention.

On Page 16 of TP's document "FY 2012 Amended 1120X reduced size", under the heading "Statement of Relief for Reasonable Cause Under Treas. Reg. §1.6038B-1(f) and 1.6038B-1T(f)", in section "C", the TP indicated,

"The advice provided by PwC included a work plan that specifically set forth that AVX needed to prepare and file a GRA relating to the reorganization of Elco. AVX's Director of Taxes, Emile Artus, and AVX relied heavily on PwC for advice and believed PwC would tell AVX of all required forms and agreements that should be included with the AVX U.S. consolidated group's ("AVX Group") Form 1120 filed for its tax year ended March 31, 2012 ("FY 2012").

4

| Form 886-A<br>(REV JANUARY 1994) | EXPLANATION OF ITEMS | | SCHEDULE NO. OR EXHIBIT |
|---|---|---|---|
| NAME OF TAXPAYER | | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
| AVX Corporation | | | 201203 to 201403 |

Prior to January 2013, PwC had understood that it was not engaged to prepare the GRAs and believed AVX would complete the agreements as part of AVX's annual tax compliance work for its FY 2012. Accordingly, PwC did not follow up with AVX regarding the filing of the GRAs until January 2013."

In the engagement letter between PwC and TP, under the document name of "Dutch holding co. PwC engagement letter 8-11-11 signed by both", dated July 12, 2011, it describes that the scope of PwC's services is to collaborate with AVX to determine potential German cash repatriation alternatives as well as Brazilian tax planning alternatives and assess the US and foreign tax implications of the proposed structure.

"PwC will provide advice, answers to questions and/or opinions on the project, including research, discussions, and preparation of a deliverable to discuss the proposed structure. As part of determining the most favorable potential planning alternative, PwC will evaluate and assess the US, German, Brazilian, and Dutch income tax implications of the proposed structures. The implementation of the planning alternative will become a part of AVX's future integration of its global structure.

Additionally, PwC will assist AVX in obtaining relief under Treas. Reg. 301.9100-3, as provided by Revenue Procedure 2003-33, for a Code § 338(g) election related to AVX's acquisition of AVX Components da Amazônia Ltda. PwC will also assist in revising and refiling Forms 5471, *Information Return of U.S. Persons With Respect to Certain Foreign Corporations* for AVX Components da Amazonia Ltda for all years for which it has been owned by AVX Corporation (i.e., since FY 1999).

The deliverable PwC will provide include:

• A detailed step plan for the proposed structure;

• A detailed work plan for the proposed structure to assist with the implementation; and

• A technical memorandum covering the US and foreign tax implications of the proposed structure.

In addition to the deliverables detailed above, PwC will also assist AVX with the implementation of the proposed structure."

In the document name of "Dutch holding co. PwC draft workplan dated 9-16-11", step 3.4 under the block name "AVX US contributes 90% of Elco to NewCo (later AVX CV), there is a description of "Prepare and file a gain recognition agreement for the

5

| Form 886-A<br>(REV JANUARY 1994) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT | |
|---|---|---|---|
| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED | |
| AVX Corporation | █████████ | 201203 to 201403 | |

contribution of Elco to NewCo." To the right of the line item appears "AVX US", which indicates that it was the TP's responsibility. The work plan is 2 pages long.

Accordingly, IE contends the record clearly establishes AVX had agreed to the responsibility of preparing and filing the GRA document itself.

In the interview of 6/2/16, it was revealed by the TP that a "draft GRA" document had been passed back and forth between the TP and PwC by e-mail during the amended return preparation between January and March 2013, but was never finalized. The TP admitted that, at the end, they simply assumed it was included in the "final" package as was presented to them by PwC.

In proposing an advisor reliance argument, IE must consider whether the reliance on the advisor is reasonable. However, the attaching of said document to the GRA package does not constitute substantive technical tax advice from their advisor. In its argument, the TP makes no distinction between substantive and nonsubstantive tax advice pertaining to these events.

This precedent is evident from the decision in US v. Boyle 55 AFTR 2d 85-1535, (105 S. Ct. 687) 1/9/1985, where a late filing penalty was properly imposed, even though the executor did not know filing deadline, engaged the services of an experienced attorney specializing in probate matters, provided him with all relevant information and records, and made frequent inquiries of the attorney about the preparation of the estate tax return. The executor had a duty to ascertain the statutory deadline and meet it. His failure to do so did not demonstrate an exercise of ordinary business care and prudence. Reliance on an attorney to prepare and file the estate tax return does not relieve an executor of his duty to comply with the statute.

Additionally, in Estate of La Meres 98 TC 294 (1992), in order to establish reasonable cause for failure to timely file, the taxpayer must show that the failure to file a timely return was due to good faith reliance on a tax expert's advice, rather than reliance on the expert to perform the taxpayer's nondelegable duty to timely file the return.

The reasonable cause standard has not been met per the TP's argument because the duty to attach the GRAs was neither delegable to the advisor, nor was PwC ever engaged to prepare the actual GRAs.

*b.*    *Promptly After Standard (TP Argument #2)*

6

| Form 886-A<br>{REV JANUARY 1994} | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
| AVX Corporation | | 201203 to 201403 |

In the reasonable cause statement TP filed with the first amended 201203 return, it reads in the 6th paragraph, "...AVX is submitting the following documents to the Service:

1) The GRAs that were omitted from AVX's original Form 1120 filed for FY 2012.
2) The F-8838s that were omitted from AVX's original Form 1120 filed for FY 2012."

TP did not include the GRAs in the first 201203 amended return filed in March 2013.

In the second amended 201203 return "Statement of Relief for Reasonable Cause Under Treas. Reg. §1.6038B-1(f) and 1.6038B-1T(f)", page 17, item D, TP indicated that they had "acted promptly" after the IE's inquiry about the GRA filing.

As cited properly, the "promptly after" standard applies to the timeliness of the relief submission itself, before the reasonable cause process starts. When the first amendment was filed with the incomplete package in March 2013, this action would have been considered "promptly after." It has no bearing on the evaluation of reasonable cause itself.

Accordingly, the "promptly after" argument as proposed by the TP was already "taken" in the form of the first amended return filing in March 2013. It cannot be used again concerning the May 2016 submission requested under examination.

### c.    Late Election (TP Argument # 3)

TP may elect to include the gain recognized in the transfer year. Treas. Reg. §1.367(a)-8(c)(2)(vi) indicates that a statement whether the U.S. transferor elects to include in income any gain recognized under paragraph (c)(1)(i) of this section in the taxable year during which a gain recognition event occurs.

The filing of GRA is a requirement of the statute. It is not an "election" unless TP elects to include the gain recognition in the transfer year. Therefore, IE has determined that "late election relief" does not apply in any form as reasonable cause in response to this filing deficiency.

### CONCLUSION:

To state the series of events clearly, the TP attempted to file their said GRAs in March 2013 and encountered difficulties in perfecting the filing until they were requested to do under examination in May 2016.

7

| Form 886-A (REV JANUARY 1994) | EXPLANATION OF ITEMS | | SCHEDULE NO. OR EXHIBIT |
|---|---|---|---|
| NAME OF TAXPAYER | | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
| AVX Corporation | | | 201203 to 201403 |

IE has determined that none of the TP's assertions as set forth in either their March 2013 or May 2016 relief requests meets the "reasonable cause" criteria. In failing to file a complete package, the TP did not exercise ordinary business care and prudence to ensure timely filing of the GRAs for tax year 201203.

Consequently, the Government determines the denial of TP's request for reasonable cause relief under IRC Sec. 6038B for 201203. Since the failure was not due to intentional disregard (not willful), the TP will be assessed a penalty under IRC Sec 6038B(b)(1) equal to $100,000 for each of the late filed GRAs. As two GRAs were due at the time of filing, the total penalty will be $200,000 for 201203.

In regards to the ACs filing for 201303 and 201403, IE believes that the Director of Taxes should have been aware of the filing requirements when the first amendment was filed in March 2013. Even if the GRAs were not attached to the amendment due to oversight and carelessness, the following years' ACs should have been filed. The total penalty will be $200,000 for each of these two years for the non-filing of the ACs.

This is a total of $600,000 in assessed penalties for all three years.

8

EXHIBIT 2

Form **2848**
(Rev. January 2018)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
# and Declaration of Representative

▶ Go to *www.irs.gov/Form2848* for instructions and the latest information.

OMB No. 1545-0150
**For IRS Use Only**
Received by:
Name _____
Telephone _____
Function _____
Date    /    /

**Part I**    **Power of Attorney**

**Caution:** A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1**    **Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s) | |
|---|---|---|
| AVX Corporation<br>1 AVX Boulevard<br>Fountain Inn, SC 29644 | Daytime telephone number<br>404-881-7980 (POA) | Plan number (if applicable) |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2**    **Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| George B. Abney (Alston & Bird LLP)<br>1201 W. Peachtree Street<br>Atlanta, GA 30309 | CAF No. ___ 0303-13469R ___<br>PTIN _____<br>Telephone No. ___ 404-881-7980 ___<br>Fax No. ___ 404-253-8380 ___ |
| Check if to be sent copies of notices and communications  ☑ | Check if new: Address ☐    Telephone No. ☐    Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____ |
| Check if to be sent copies of notices and communications  ☐ | Check if new: Address ☐    Telephone No. ☐    Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____ |
| Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐    Telephone No. ☐    Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____ |
| Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐    Telephone No. ☐    Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3**    **Acts authorized (you are required to complete this line 3).** With the exception of the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts that I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 5000A Shared Responsibility Payment, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| Civil Penalties | 843 | 2012-2014 |
| Income | 1120 | 2012-2017 |
| | | |

**4**    **Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific Use Not Recorded on CAF** . . . . . . . . . . . . . . . . ▶ ☐

**5a**    **Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information): ☐ Access my IRS records via an Intermediate Service Provider;
☐ Authorize disclosure to third parties;    ☑ Substitute or add representative(s); ☐ Sign a return; _____

_____

_____

☐ Other acts authorized: _____

_____

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.    Cat. No. 11980J    Form **2848** (Rev. 1-2018)

Form 2848 (Rev. 1-2018)

**b**  Specific acts not authorized. My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): _____

_____

**6**  Retention/revocation of prior power(s) of attorney. The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this document. If you do **not** want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7**  Signature of taxpayer. If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the legal authority to execute this form on behalf of the taxpayer.

▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| | | |
|---|---|---|
| _[signature]_ | _5·1·19_ | SR. VICE PRESIDENT / CFO |
| Signature | Date | Title (if applicable) |
| MICHAEL E. HUFNAGEL | | |
| Print Name | | Print name of taxpayer from line 1 if other than individual |

## Part II  Declaration of Representative

Under penalties of perjury, by my signature below I declare that:

• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;

• I am subject to regulations contained in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;

• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and

• I am one of the following:

**a**  Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

**b**  Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.

**c**  Enrolled Agent—enrolled as an agent by the Internal Revenue Service per the requirements of Circular 230.

**d**  Officer—a bona fide officer of the taxpayer organization.

**e**  Full-Time Employee—a full-time employee of the taxpayer.

**f**  Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister)

**g**  Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Internal Revenue Service is limited by section 10.3(d) of Circular 230).

**h**  Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). *See Special Rules and Requirements for Unenrolled Return Preparers in the instructions for additional information.*

**k**  Qualifying Student—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student working in an LITC or STCP. See instructions for Part II for additional information and requirements.

**r**  Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

Note: For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable). | Bar, license, certification, registration, or enrollment number (if applicable). | Signature | Date |
|---|---|---|---|---|
| a | Georgia & Florida | 121676 (GA); 171557 (FL) | _[signature]_ | 5/7/19 |
| | | | | |
| | | | | |
| | | | | |

Form **2848** (Rev. 1-2018)

**EXHIBIT  3**



**Department of the Treasury**
**Internal Revenue Service**
**Large Business & International Division**

Date:
10/12/2017
Person to contact:
J. Rowena Cheek
Contact address:
10715 David Taylor Dr., Charlotte NC
Contact telephone number:
(704) 548-4246
Contact fax number:
(855)-627-0554
Taxpayer year at issue:
201203

AVX Corporation
1 AVX Boulevard
Fountain Inn, SC 29644
Attn.: Emile Artus, Director of Tax

**Re: Notification of determination under Treasury Regulation Section 1.367(a)-8(p)**

Dear Mr. Artus,

We've reviewed the request for relief submitted by AVX Corporation for the tax year ending March 31, 2012.

We've determined that AVX Corporation has demonstrated that the failure to file or comply wasn't willful with respect to the following documents:

1) Form 1120X; 2) 3 Form 8838s; 3) Gain Recognition Agreement Under Regulation Section 1.367(a)-8

between AVX Corp. and AVX CV; 4) Gain Recognition Agreement Under Regulation Section 1.367(a)-8

between AVX Development and AVX CV 5) Statement of Non-Willful Intent and Request for Relief Under

Treas. Reg. § 1.367(a)-8(p) for Late-Filed Gain Recognition Agreement.

Our determination on this issue is not a determination that the taxpayer is otherwise eligible to file the document, nor that any information provided, or position taken, by the taxpayer in any document is correct.

Please keep this letter for your records. It will be your only written notification of the determination from the IRS.

If you have questions about this letter, you can contact the person above.

Sincerely,

Orrin D. Byrd

Director of Field Operations
Cross Border Activities Practice Area
Large Business & International Division

Letter 4861 (Rev. 8-2016)
Catalog Number 58749U



**Department of the Treasury**
**Internal Revenue Service**
**Large Business & International Division**

Date:
10/12/2017
Person to contact:
J. Rowena Cheek
Contact address:
10715 David Taylor Dr., Charlotte NC
Contact telephone number:
(704) 548-4246
Contact fax number:
(855)-627-0554
Taxpayer year at issue:
201303

AVX Corporation
1 AVX Boulevard
Fountain Inn, SC 29644
Attn.: Emile Artus, Director of Tax

**Re: Notification of determination under Treasury Regulation Section 1.367(a)-8(p)**

Dear Mr. Artus,

We've reviewed the request for relief submitted by AVX Corporation for the tax year ending March 31, 2013.

We've determined that AVX Corporation has demonstrated that the failure to file or comply wasn't willful with respect to the following documents:

1) Form 1120X;

2) Gain Recognition Agreement Annual Certification Under Regulation Section 1.367(a)-8(g);

3) Statement of Non-Willful Intent and Request for Relief Under Treas. Reg. § 1.367(a)-8(p) for Late-Filed

   Gain Recognition Agreement Annual Certification.

Our determination on this issue is not a determination that the taxpayer is otherwise eligible to file the document, nor that any information provided, or position taken, by the taxpayer in any document is correct.

Please keep this letter for your records. It will be your only written notification of the determination from the IRS.

If you have questions about this letter, you can contact the person above.

Sincerely,

Orrin D. Byrd

Director of Field Operations
Cross Border Activities Practice Area
Large Business & International Division

Letter 4861 (Rev. 8-2016)
Catalog Number 58749U



**Department of the Treasury**
**Internal Revenue Service**
**Large Business & International Division**

Date:
  10/12/2017
Person to contact:
  J. Rowena Cheek
Contact address:
  10715 David Taylor Dr., Charlotte NC
Contact telephone number:
  (704) 548-4246
Contact fax number:
  (855)-627-0554
Taxpayer year at issue:
  201403

AVX Corporation
1 AVX Boulevard
Fountain Inn, SC 29644
Attn.: Emile Artus, Director of Tax

**Re: Notification of determination under Treasury Regulation Section 1.367(a)-8(p)**

Dear Mr. Artus,

We've reviewed the request for relief submitted by AVX Corporation for the tax year ending March 31, 2014.

We've determined that AVX Corporation has demonstrated that the failure to file or comply wasn't willful with respect to the following documents:

1) Form 1120X;

2) Gain Recognition Agreement Annual Certification Under Regulation Section 1.367(a)-8(g);

3) Statement of Non-Willful Intent and Request for Relief Under Treas. Reg. § 1.367(a)-8(p) for Late-Filed

   Gain Recognition Agreement Annual Certification.

Our determination on this issue is not a determination that the taxpayer is otherwise eligible to file the document, nor that any information provided, or position taken, by the taxpayer in any document is correct.

Please keep this letter for your records. It will be your only written notification of the determination from the IRS.

If you have questions about this letter, you can contact the person above.

Sincerely,

Orrin D. Byrd

Director of Field Operations
Cross Border Activities Practice Area
Large Business & International Division

Letter 4861 (Rev. 8-2016)
Catalog Number 58749U

EXHIBIT 4

IRS

| Form **4564** (Rev. September 2006) | Department of the Treasury — Internal Revenue Service **Information Document Request** | | Request Number IE-110 |
|---|---|---|---|

| To: (Name of Taxpayer and Company Division or Branch) AVX CORPORATION 1 AVX BLVD FOUNTAIN INN, South Carolina 296449039 | Subject Gain Recognition Agreement ("GRA") | |
|---|---|---|
| | SAIN Number | Submitted To: Artus, Emile |
| | Dates of Previous Requests 11/23/2015 | |
| Please return Part 2 with listed documents to requester identified below | | |

Description of documents requested

In your email dated October 19, 2015, you have provided a summary timeline of formation of AVX Koninkrijk de Nederlanden CV ("AVX CV"), a Dutch Holding Company. A part of this structure indicated that on March 12, 2012, AVX US and AVX Development contributed total of 90% of Elco Europe GmbH in Germany ("Elco") to AVX CV.

IRC §367(a) depicts that if, in connection with any exchange described in section 332, 351, 354, 356, or 361, a United States person transfers property to a foreign corporation, such foreign corporation shall not, for purposes of determining the extent to which gain shall be recognized on such transfer, be considered to be a corporation.

In order for you to secure the tax-free treatment with your outbound stock transfer (US transferred 90% of Elco to AVX CV), a GRA must be filed in tax year 201203, as well as filing annual certifications for the following 5 years that no triggering events have occurred requiring recognition of gain on the initial outbound transfer.

Please provide a copy of 1) the GRA - if you didn't file a GRA, please provide explanation why; 2) annual certifications for 201303 and 201403.

*After receipt of your response to this IDR, I will review the documents and inform you if the items requested have been provided. This does not preclude that the potential issue is completed or resolved.*

| Information Due By 02/04/2016 | | At Next Appointment ☐ | Mail in ☐ | |
|---|---|---|---|---|
| **From:** | Name and Title of Requester Cheek, Jingrong Rowena Information Specialist | 1NGLB Digitally signed by 1NGLB DN: cn=1NGLB, cn=Jingrong.Cheek@ir s.gov Date: 2015.12.21 13:42:39 -05'00' | Employee ID number | Date (mmddyyyy) 12/21/2015 |
| | Office Location 4905 Koger Boulevard Greensboro, North Carolina 27407-2734 | | | Telephone Number 704-548-4246 |

| Catalog Number 23145K | www.irs.gov | Part 1 - Taxpayer's File Copy | Form **4564** (Rev. 9-2006) |
|---|---|---|---|

# EXHIBIT 5

Form **1120X**
(Rev. January 2011)
Department of the Treasury
Internal Revenue Service

## Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending
▶ .......... 03/2012 ..........
(Enter month and year.)

| | |
|---|---|
| Name | Employer identification number |
| **Please Type or Print** | AVX Corporation |
| | Number, street, and room or suite no. (If a P.O. box, see instructions.) |
| | 1 AVX Boulevard |
| | City or town, state, and ZIP code |
| | Fountain Inn            SC      29644 |

Telephone number (optional)

Enter name and address used on original return (if same as above, write "Same.")

Same

Internal Revenue Service Center
where original return was filed ▷        Ogden, UT

### Fill in applicable items and use Part II on the back to explain any changes

**Part I    Income and Deductions** (see instructions)

| | | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income | 1 | 242,389,676 | | 242,389,676 |
| 2 | Total deductions | 2 | 134,640,318 | | 134,640,318 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 107,749,360 | 0 | 107,749,360 |
| 4 | Total tax | 4 | 33,545,579 | | 33,545,579 |

**Payments and Credits** (see instructions)

| | | | | |
|---|---|---|---|---|
| 5 a | Overpayment in prior year allowed as a credit | 5a | | |
| b | Estimated tax payments | 5b | 41,000,000 | 41,000,000 |
| c | Refund applied for on Form 4466 | 5c | | |
| d | Subtract line 5c from the sum of lines 5a and 5b | 5d | 41,000,000 | 0 | 41,000,000 |
| e | Tax deposited with Form 7004 | 5e | | |
| f | Credit from Form 2439 | 5f | | |
| g | Credit for federal tax on fuels and other refundable credits | 5g | | |

| | | | |
|---|---|---|---|
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | |
| 7 | Add lines 5d through 6, column (c) | 7 | 41,000,000 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | 7,454,421 |
| 9 | Subtract line 8 from line 7 | 9 | 33,545,579 |

**Tax Due or Overpayment** (see instructions)

| | | | |
|---|---|---|---|
| 10 | Tax due. Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" ▶ | 10 | 0 |
| 11 | Overpayment. Subtract line 4, column (c), from line 9 ▶ | 11 | 0 |
| 12 | Enter the amount of line 11 you want: Credited to 20  16  Estimated tax ▶            Refunded ▶ | 12 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer          Date  5/2/2016          Title  VP, CFO & Treasurer

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ | | | Firm's EIN ▶ | |
| Firm's address ▶ | | | Phone no. | |

For Paperwork Reduction Act Notice, see instructions.
HTA

Form **1120X** (Rev. 1-2011)

Form 1120X (Rev. 1-2011)          AVX Corporation                                              Page **2**

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** in the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** in the instructions, and check here . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

AVX Corporation is amending its 3/31/2012 federal Form 1120 for the following reasons:

1) To include a statement of non-willful intent and request for relief under Regulation Section 1.367(a)-8(p) for

late-filed Gain Recognition Agreement for AVX Corporation and AVX Development Incorporated.

2) To include a statement of relief for reasonable cause under Regulation Section 1.6038B-1(f) and 1.6038B-1T(f)

for AVX Corporation and AVX Development Incorporated.

3) To include the Gain Recognition Agreement under Regulation Section 1.367(a)-8 for both AVX Corporation and

AVX Development Incorporated. Per instruction from the IRS, also included is the Form 8838 for

AVX Corporation, AVX Development Incorporated, and AVX Koninkrijk der Nederlanden CV.

Form **1120X** (Rev. 1-2011)

GAIN RECOGNITION AGREEMENT UNDER REGULATION SECTION 1.367(a)-8

1) Pursuant to Treas. Reg. § 1.367(a)-8, AVX Corporation, EIN: ▮▮▮▮▮▮ (the "U.S. Transferor"), submits the following:

On March 12, 2012, AVX Corporation transferred (the **"Transfer"**) its 89.1 percent interest in Elco Europe GmbH ("Elco"), a German *Gesellschaft mit beschränkter Haftung* that is treated as a corporation for U.S. federal income tax purposes, to AVX Koninkrijk der Nederlanden CV ("AVX CV"). This transfer is described in Internal Revenue Code ("IRC") section 351.

2) This document constitutes an agreement to recognize gain by AVX Corporation (the "U.S. Transferor"), in accordance with the requirements of Treas. Reg. § 1.367(a)-8 on the transfer of Elco (the "Transferred Corporation") to AVX CV (the "Transferee Foreign Corporation").

3) Description of the transferred stock or securities and other required information:

i)
A) Type or class, amount, and characteristics of the transferred stock or securities transferred: The U.S. Transferor transferred 891 common shares, with ordinary characteristics for U.S. federal income tax purposes, of the Transferred Corporation to the Transferee Foreign Corporation.

B) Fair market value of the transferred stock on the date of the transfer (*i.e.*, March 12, 2012): $105,227,100

Cost or other basis of property and any adjustments thereto: $8,375,400

Built-in gain: $96,851,700

C) Gain recognized by the U.S. transferor on the transfer: None

D) Percentage (by voting power and value) that the transferred stock (if any) represents of the total stock outstanding of the transferred corporation on the date of the transfer: 89.1 percent by vote and by value

ii) Name, address, and place of incorporation, and taxpayer identification number (if any) of the Transferred Corporation:

Name: Elco Europe GmbH
Address: Benjamin Fox Strasse 1, Betzdorf, Germany
Place of Incorporation of Transferred Corporation: Germany
Taxpayer Identification Number of Transferred Corporation: N/A

iii) <u>Date on which U.S. Transferor acquired the transferred stock or securities</u>: April 1, 1995

iv) <u>The name, address and place of incorporation of the Transferee Foreign Corporation, and a description of the stock or securities received by the U.S. Transferor in the transfer, including the percentage of stock (by vote and value) of the Transferee Foreign Corporation received in such exchange.</u>

AVX Koninkrijk der Nederlanden CV, 3rd Floor Hilder Center, 2 Sung Ping Street, Hung Hom, Kowloon, Hong Kong, a Dutch *Commanditaire Vennotschap* that is treated as a corporation for U.S. federal income tax purposes, is the Transferee Foreign Corporation. The Transferee Foreign Corporation does not issue evidence or indicia of its ownership separate from its formation documents. Immediately after the Transfer, the U.S. Transferor owned an interest constituting 99.06 percent of the vote and value of the Transferee Foreign Corporation.

   A) <u>As required by Treas. Reg. § 1.367(a)-8(c)(2)(v)(B) in the case of a new GRA filed under Treas. Reg. § 1.367(a)-8, a description of the class, amount, and characteristics of the stock, securities or partnership interest received in the transaction that gives rise to the new gain recognition agreement.</u>

   Not Applicable

v) The Transfer was not a transaction described in Treas. Reg. § 1.367(a)-3(e).

vi) The Transferred Corporation is not a domestic corporation.

vii) The Transferred Corporation is a foreign corporation. The U.S. Transferor was a Section 1248 Shareholder, as defined in Treas. Reg. § 1.367(b)-2(b), of the Transferred Corporation immediately before the exchange.

The U.S. Transferor is a Section 1248 Shareholder with respect to AVX CV (the Foreign Transferee Corporation) immediately after the Transfer and the reporting requirements or other rules contained in the regulations under section 367(b) that are applicable have been satisfied.

viii) The Transfer did not involve a transfer by a partnership (as described in Treas. Reg. § 1.367(a)-1T(c)(3)(i)) or a transfer of a partnership interest (as described in section 367(a)(4) and Treas. Reg. § 1.367(a)-1T(c)(3)(ii)).

ix) The Transfer did not involve a transfer of property other than the stock of the transferred corporation.

4) The U.S. Transferor agrees to comply with all the conditions and requirements of Treas. Reg. § 1.367(a)-8, including to recognize gain under this GRA in accordance with Treas. Reg. § 1.367(a)-8(c)(1)(i) and to file the certification described in Treas. Reg. § 1.367(a)-8(g). The U.S. Transferor, as provided in Treas. Reg. § 1.367(a)-8(j)(8), agrees to treat a failure to comply (as described in Treas. Reg. § 1.367(a)-8(j)(8)) as extending the period of limitations on assessment of tax for the taxable year in which gain is required to be reported. The U.S. Transferor previously extended the statute of limitations on assessments of tax as provided in Treas. Reg. § 1.367(a)-8(f). Please see a copy of the previously filed Form 8838 attached.

5) Arrangements have been made to ensure that the U.S. Transferor is informed of any events that affect the gain recognition agreement, including triggering events or other gain recognition events.

6) The U.S. Transferor elects to include in income any gain recognized under Treas. Reg. § 1.367(a)-8(c)(1)(i) in the taxable year during which a gain recognition event occurs.

7) A gain recognition event did not occur during the taxable year of the Transfer.

8) On March 30, 2012, the Transferred Corporation paid a cash dividend of $21,600,000 to its shareholders. This disposition did not constitute a disposition of substantially all of the assets of the Transferred Corporation. Other than this dividend distribution, there was no disposition of assets of the Transferred Corporation (*i.e.*, Elco) during the taxable year of the Transfer other than in the ordinary course of business.

Under penalties of perjury, I declare that I have examined this statement, and to the best of my knowledge and belief, it is true, correct, and complete.

Kurt Cummings VP & ___ 5/2/2016

[Name & Title]                                     Date

<u>GAIN RECOGNITION AGREEMENT UNDER REGULATION SECTION 1.367(a)-8</u>

1) Pursuant to Treas. Reg. § 1.367(a)-8(d)(3), AVX Corporation, EIN: ▮▮▮▮▮ submits the following on behalf of AVX Development, Inc. EIN: ▮▮▮▮▮ (the "U.S. Transferor"):

On March 12, 2012, AVX Development, Inc. transferred (the "**Transfer**") its 0.9 percent interest in Elco Europe GmbH ("Elco"), a German *Gesellschaft mit beschränkter Haftung* that is treated as a corporation for U.S. federal income tax purposes, to AVX Koninkrijk der Nederlanden CV ("AVX CV"). This transfer is described in section 351.

2) This document constitutes an agreement to recognize gain by the AVX Development, Inc. (the "U.S. Transferor") in accordance with the requirements of Treas. Reg. § 1.367(a)-8 on the transfer of Elco (the "Transferred Corporation") to AVX CV (the "Transferee Foreign Corporation").

3) <u>Description of the transferred stock or securities and other required information:</u>

   i)

   A) <u>Type or class, amount, and characteristics of the transferred stock or securities transferred</u>: The U.S. Transferor transferred 9 common shares, with ordinary characteristics for U.S. federal income tax purposes, of the Transferred Corporation to the Transferee Foreign Corporation.

   B) <u>Fair market value of the transferred stock on the date of the transfer (*i.e.*, March 12, 2012)</u>: $1,062,900

   <u>Cost or other basis of property and any adjustments thereto</u>: $84,600

   <u>Built-in gain</u>: $978,300

   C) <u>Gain recognized by the U.S. transferor on the transfer</u>: None

   D) <u>Percentage (by voting power and value) that the transferred stock (if any) represents of the total stock outstanding of the transferred corporation on the date of the transfer</u>: 0.9 percent by vote and by value

   ii) <u>Name, address, and place of incorporation, and taxpayer identification number (if any) of the Transferred Corporation:</u>

   <u>Name</u>: Elco Europe GmbH
   <u>Address</u>: Benjamin Fox Strasse 1, Betzdorf, Germany
   <u>Place of Incorporation of Transferred Corporation</u>: Germany

Page 1 of 3

Taxpayer Identification Number of Transferred Corporation: N/A

iii) Date on which U.S. Transferor acquired the transferred stock or securities: March 12, 2012.

iv) The name, address and place of incorporation of the Transferee Foreign Corporation, and a description of the stock or securities received by the U.S. Transferor in the transfer, including the percentage of stock (by vote and value) of the Transferee Foreign Corporation received in such exchange.

AVX Koninkrijk der Nederlanden CV, 3rd Floor Hilder Center, 2 Sung Ping Street, Hung Hom, Kowloon, Hong Kong, a Dutch *Commanditaire Vennotschap* that is treated as a corporation for U.S. federal income tax purposes, is the Transferee Foreign Corporation. The Transferee Foreign Corporation does not issue evidence or indicia of its ownership separate from its formation documents. Immediately after the Transfer, the U.S. Transferor owned an interest constituting 0.94 percent of the vote and value of the Transferee Foreign Corporation.

A) As required by Treas. Reg. § 1.367(a)-8(c)(2)(v)(B) in the case of a new GRA filed under Treas. Reg. § 1.367(a)-8, a description of the class, amount, and characteristics of the stock, securities or partnership interest received in the transaction that gives rise to the new gain recognition agreement.

Not Applicable

v) The Transfer was not a transaction described in Treas. Reg. § 1.367(a)-3(e).

vi) The Transferred Corporation is not a domestic corporation.

vii) The Transferred Corporation is a foreign corporation. The U.S. Transferor was a Section 1248 Shareholder, as defined in Treas. Reg. § 1.367(b)-2(b), of the Transferred Corporation immediately before the exchange.

The U.S. Transferor is a Section 1248 Shareholder with respect to AVX CV (the Foreign Transferee Corporation) immediately after the Transfer and the reporting requirements or other rules contained in the regulations under section 367(b) that are applicable have been satisfied.

viii) The Transfer did not involve a transfer by a partnership (as described in Treas. Reg. § 1.367(a)-1T(c)(3)(i)) or a transfer of a partnership interest (as described in section 367(a)(4) and Treas. Reg. § 1.367(a)-1T(c)(3)(ii)).

ix) The Transfer did not involve a transfer of property other than the stock of the transferred corporation.

Page 2 of 3

4) On behalf of the U.S. Transferor, AVX Corporation agrees to comply with all the conditions and requirements of Treas. Reg. § 1.367(a)-8, including to recognize gain under this GRA in accordance with Treas. Reg. § 1.367(a)-8(c)(1)(i) and to file the certification described in Treas. Reg. § 1.367(a)-8(g). AVX Corporation, on behalf of the U.S. Transferor, as provided in Treas. Reg. § 1.367(a)-8(j)(8), agrees to treat a failure to comply (as described in Treas. Reg. § 1.367(a)-8(j)(8)) as extending the period of limitations on assessment of tax for the taxable year in which gain is required to be reported. AVX Corporation, on behalf of the U.S. Transferor, previously extended the statute of limitations on assessments of tax as provided in Treas. Reg. § 1.367(a)-8(f). Please see a copy of the previously filed Form 8838 attached.

5) Arrangements have been made to ensure that AVX Corporation and the U.S. Transferor are informed of any events that affect the gain recognition agreement, including triggering events or other gain recognition events.

6) AVX Corporation, on behalf of the U.S. Transferor, elects to include in income any gain recognized under Treas. Reg. § 1.367(a)-8(c)(1)(i) in the taxable year during which a gain recognition event occurs.

7) A gain recognition event did not occur during the taxable year of the Transfer.

8) On March 30, 2012, the Transferred Corporation paid a cash dividend of $21,600,000 to its shareholders. This disposition did not constitute a disposition of substantially all of the assets of the Transferred Corporation. Other than this dividend distribution, there was no disposition of assets of the Transferred Corporation (*i.e.*, Elco) during the taxable year other than in the ordinary course of business.

Under penalties of perjury, I declare that I have examined this statement, and to the best of my knowledge and belief, it is true, correct, and complete.

_____  Kurt Cummings VP CFO            5/2/2016
        **[Name & Title]**                                        Date

Form **8838**
(Rev. December 2012)
Department of the Treasury
Internal Revenue Service

**Consent To Extend the Time To Assess Tax Under
Section 367—Gain Recognition Agreement**
▶ Attach to your income tax return.
▶ Information about Form 8838 and its instructions is at *www.irs.gov/form8838.*

OMB No. 1545-1395

Attachment
Sequence No. **145**

| Name(s) of consenting taxpayer(s) | Identifying number (see instructions) |
|---|---|
| AVX Corporation | Social security number of spouse (only if a joint income tax return was filed) |

Number, street, and room or suite no. (If a P.O. box, see instructions.)

1 AVX Blvd.

City or town, state, and ZIP code

Fountain Inn SC 29644

The taxpayer(s) listed above and the Commissioner of Internal Revenue, pursuant to the regulations under section 367, agree to the following:

1. The amount of any federal income tax due relating to the transfer described in Item 5, below, on any income tax return made by or for the above taxpayer(s) for the tax year ended ___March___ , ___31___ , ___2012___ , may be
   month        day        year
   assessed at any time on or before ___March___ , ___31___ , ___2020___ , (expiration date—see instructions).
   month        day        year

2. This consent establishes an extended period for assessing tax. The expiration of the extended period may be suspended or otherwise affected by the operation of law in the same manner as the original period. For example, if a notice of deficiency in tax covered by this consent is issued, the period for assessing tax will not end prior to the end of the suspension period provided for by section 6503(a), plus any time that remains in the assessment period, as extended, at the time the suspension takes effect. Under no circumstances will this consent reduce the period of time otherwise provided by law for making an assessment.

3. The consenting taxpayer(s) may file a claim for credit or refund for the tax assessed by reason of this consent within 6 months after the period ends for assessing tax established by this consent.

4. The amount of any deficiency assessment covered by this consent will be limited to the amount of any federal income tax due relating to the recognition of gain on the transfer described in Item 5, including any penalties, additions to tax, and interest attributable thereto and consequential changes to other items based on that adjustment.

5. Complete the following information (see instructions):
   a. Date of transfer                                              March 12, 2012
   b. Description of the property transferred 89.1 percent (891 common shares) of taxpayer's total of 99.1 percent
   (991 common shares) beneficial ownership interest in Elco Europe GmbH, a German corporation.
   .................................................................................................................................
   .................................................................................................................................

   c. Name of transferee and identifying number, if any AVX Koninkrijk der Nederlanden CV, EIN 80-0807334, a Dutch partnership treated
   as a corporation for U.S. tax purposes.

Under penalties of perjury, I declare that I have examined this consent, including accompanying statements and schedules, and to the best of my knowledge and belief, it is true, correct, and complete. A signed consent, properly completed in accordance with this form and its instructions, is deemed to have been executed by the Commissioner of Internal Revenue.

▶ _____ VP/CFO    ▶ _____3/13/13_____
Signature of consenting taxpayer (see instructions)         Date

▶ _____    ▶ _____
Signature of spouse (complete only if a joint return is filed)    Date

▶ _____    ▶ _____
Taxpayer's representative sign here                        Date

▶ _____    ▶ _____
Corporate officer(s) sign here                            Date

For Paperwork Reduction Act Notice, see the instructions.    Cat. No. 20471F    Form **8838** (Rev. 12-2012)

**Form 8838** (Rev. December 2012)
Department of the Treasury
Internal Revenue Service

**Consent To Extend the Time To Assess Tax Under Section 367—Gain Recognition Agreement**

▶ Attach to your income tax return.
▶ Information about Form 8838 and its instructions is at www.irs.gov/form8838.

OMB No. 1545-1395

Attachment Sequence No. **145**

Name(s) of consenting taxpayer(s)

AVX Development, Inc.
c/o AVX Corporation

Identifying number (see instructions)

Social security number of spouse (only if a joint income tax return was filed)

Number, street, and room or suite no. (if a P.O. box, see instructions.)

1 AVX Blvd.

City or town, state, and ZIP code

Fountain Inn SC 29644

The taxpayer(s) listed above and the Commissioner of Internal Revenue, pursuant to the regulations under section 367, agree to the following:

1  The amount of any federal income tax due relating to the transfer described in Item 5, below, on any income tax return made by or for the above taxpayer(s) for the tax year ended  March , 31 , 2012 , may be
   month   day   year
   assessed at any time on or before  March , 31 , 2020 , (expiration date—see instructions).
   month   day   year

2  This consent establishes an extended period for assessing tax. The expiration of the extended period may be suspended or otherwise affected by the operation of law in the same manner as the original period. For example, if a notice of deficiency in tax covered by this consent is issued, the period for assessing tax will not end prior to the end of the suspension period provided for by section 6503(a), plus any time that remains in the assessment period, as extended, at the time the suspension takes effect. Under no circumstances will this consent reduce the period of time otherwise provided by law for making an assessment.

3  The consenting taxpayer(s) may file a claim for credit or refund for the tax assessed by reason of this consent within 6 months after the period ends for assessing tax established by this consent.

4  The amount of any deficiency assessment covered by this consent will be limited to the amount of any federal income tax due relating to the recognition of gain on the transfer described in Item 5, including any penalties, additions to tax, and interest attributable thereto and consequential changes to other items based on that adjustment.

5  Complete the following information (see instructions):
a  Date of transfer  March 12, 2012
b  Description of the property transferred  All of taxpayer's total of 0.9 percent (9 common shares) beneficial ownership interest in Elco Europe GmbH, a German corporation.

c  Name of transferee and identifying number, if any  AVX Koninkrijk der Nederlanden CV, EIN 80-0807334, a Dutch partnership treated as a corporation for U.S. tax purposes.

Under penalties of perjury, I declare that I have examined this consent, including accompanying statements and schedules, and to the best of my knowledge and belief, it is true, correct, and complete. A signed consent, properly completed in accordance with this form and its instructions, is deemed to have been executed by the Commissioner of Internal Revenue.

PRES. / TREAS.

Signature of consenting taxpayer (see instructions)  Date  3/13/13

Signature of spouse (complete only if a joint return is filed)  Date

Taxpayer's representative sign here  Date

Corporate officer(s) sign here  Date

For Paperwork Reduction Act Notice, see the instructions.    Cat. No. 20471F    Form **8838** (Rev. 12-2012)

| Form **8838** (Rev. December 2012) Department of the Treasury Internal Revenue Service | **Consent To Extend the Time To Assess Tax Under Section 367—Gain Recognition Agreement** ▶ Attach to your income tax return. ▶ Information about Form 8838 and its instructions is at www.irs.gov/form8838. | OMB No. 1545-1395 Attachment Sequence No. 145 |
|---|---|---|

| Name(s) of consenting taxpayer(s) AVX Koninkrijk der Nederlanden CV | Identifying number (see instructions) Social security number of spouse (only if a joint income tax return was filed) |
|---|---|

Number, street, and room or suite no. (if a P.O. box, see instructions.)

3rd Floor Hilder Center, 2 Sung Ping Street

City or town, state, and ZIP code

Hung Hom, Kowloon, Hong Kong

The taxpayer(s) listed above and the Commissioner of Internal Revenue, pursuant to the regulations under section 367, agree to the following:

**1** The amount of any federal income tax due relating to the transfer described in Item 5, below, on any income tax return made by or for the above taxpayer(s) for the tax year ended ___March___, ___31___, ___2012___, may be
month     day     year
assessed at any time on or before ___March___, ___31___, ___2020___, (expiration date—see instructions).
month     day     year

**2** This consent establishes an extended period for assessing tax. The expiration of the extended period may be suspended or otherwise affected by the operation of law in the same manner as the original period. For example, if a notice of deficiency in tax covered by this consent is issued, the period for assessing tax will not end prior to the end of the suspension period provided for by section 6503(a), plus any time that remains in the assessment period, as extended, at the time the suspension takes effect. Under no circumstances will this consent reduce the period of time otherwise provided by law for making an assessment.

**3** The consenting taxpayer(s) may file a claim for credit or refund for the tax assessed by reason of this consent within 6 months after the period ends for assessing tax established by this consent.

**4** The amount of any deficiency assessment covered by this consent will be limited to the amount of any federal income tax due relating to the recognition of gain on the transfer described in Item 5, including any penalties, additions to tax, and interest attributable thereto and consequential changes to other items based on that adjustment.

**5** Complete the following information (see instructions):

**a** Date of transfer _____ March 12, 2012

**b** Description of the property transferred 89.1 percent (891 common shares) of AVX Corporation's (EIN 33-0379007) total of 99.1 percent (991 common shares) beneficial ownership interest, and all of AVX Development's (EIN 11-2663341) total of 0.9% percent (9 common shares) beneficial ownership interest, in Elco Europe GmbH, a German corporation. Total transfer of 90 percent (900 shares) beneficial ownership interest.

**c** Name of transferee and identifying number, if any AVX Koninkrijk der Nederlanden CV, EIN 90-0807334, a Dutch partnership treated as a corporation for U.S. tax purposes.

Under penalties of perjury, I declare that I have examined this consent, including accompanying statements and schedules, and to the best of my knowledge and belief, it is true, correct, and complete. A signed consent, properly completed in accordance with this form and its instructions, is deemed to have been executed by the Commissioner of Internal Revenue.

VP/KFO OF GENERAL PARTNER

| Signature of consenting taxpayer (see instructions) | Date 3/13/13 |
|---|---|
| Signature of spouse (complete only if a joint return is filed) | Date |
| Taxpayer's representative sign here | Date |
| Corporate officer(s) sign here | Date |

For Paperwork Reduction Act Notice, see the instructions.    Cat. No. 20471F    Form **8838** (Rev. 12-2012)

AVX Corporation, EIN: ▮
AVX Development Inc., EIN: ▮
Form 1120X for Tax Year Ended March 31, 2012

### STATEMENT OF NON-WILLFUL INTENT AND REQUEST FOR RELIEF UNDER TREAS. REG. § 1.367(a)-8(p) FOR LATE-FILED GAIN RECOGNITION AGREEMENT

On December 14, 2012, the taxpayer, AVX Corporation ("AVX" or "the company") filed Form 1120, *U.S. Corporation Income Tax Return*, for the AVX consolidated group's ("AVX group") tax year ended March 31, 2012 ("FY 2012"). The company's original return did not include certain required documents related to the transfer of shares in a foreign corporation. A Form 1120X, *Amended U.S. Corporation Income Tax Return* (the "original amended return"), was filed on March 13, 2013, in part to provide the Internal Revenue Service ("IRS") with such required documents.

This Form 1120X, *Amended U.S. Corporation Income Tax Return,* is being filed, in part, to provide the IRS with original Gain Recognition Agreements ("GRAs") for AVX and AVX Development Inc., which were inadvertently not attached to the original amended return for FY 2012.

AVX Development Inc. is a member of the AVX group.

This amended return is being filed as soon as possible following the discovery in December 2015 that the GRAs were inadvertently not attached to the original amended return. AVX is not under IRS examination for the tax year (FY 2012) for which non-willful intent relief is being requested.

Based on the facts set forth below, the GRAs were not timely filed due to reasonable cause and not due to willful neglect. AVX respectfully requests that the filing of such GRAs be treated as timely made, and that the failure to file the GRAs with AVX's original Form 1120 and with the original amended return not be considered a triggering event under Reg. § 1.367(a)-8(j).

For transfers occurring after March 13, 2009, Treas. Reg. §§ 1.367(a)-8(p)(1) and (2) provide relief to a taxpayer that fails to file a timely GRA if the taxpayer is able to show that such failure is due to reasonable cause and not willful neglect, and if the person files the agreement as soon as he becomes aware of the failure. In satisfaction of those requirements, AVX is submitting the following documents to the IRS:

1) The GRAs that were omitted from AVX's original Form 1120X filed for FY 2012.
2) Pursuant to Treas. Reg. § 1.367(a)-8(p)(2), a copy of the previously filed Forms 8838 related to such GRAs.

AVX understands that, pursuant to IRC Section 6501(c)(8)(A) and Treas. Reg. § 1.6038B-1(f)(1)(ii), since this amended return contains "information required to be reported" as defined by the above authority, the time for assessment of any tax imposed related to such filing shall not expire before a date three (3) years after the filing of this amended return with the IRS.

### I.    Background

A.    The Transfers by AVX and AVX Development, Inc. to AVX CV

AVX and AVX Development Inc. owned 99.1 and 0.9 percent interests, respectively, in Elco Europe GmbH ("Elco"), a German *Gesellschaft mit beschränkter Haftung* that is treated as a corporation for U.S. federal income tax purposes. Such total 100 percent interest was acquired on April 1, 1995. Pursuant to IRC Section 351, on March 12, 2012,

AVX and AVX Development, Inc. transferred 89.1 and 0.9 percent interest, respectively, in Elco to AVX Koninkrijk der Nederlanden CV ("AVX CV") in exchange for interests constituting 99.0 and 1.0 percent, respectively, of the voting power and value of AVX CV.

AVX CV is a Dutch *Commanditaire Vennotschap* that is treated as a corporation for U.S. federal income tax purposes. However, for Dutch purposes it is a partnership and therefore needs to have two owners. Accordingly, AVX structured the transfers of interests in Elco to AVX CV so that AVX would have a 99 percent ownership interest in AVX CV and AVX Development Inc. would have a 1 percent ownership interest.

That transaction was one component in AVX's implementation of a European holding company structure to align its businesses along mainly geographic lines to allow for greater flexibility with respect to global strategic planning across business lines and geographic markets. It is expected that the European holding company will hold many of AVX's foreign subsidiaries. Such a structure will increase business efficiencies by reducing administrative costs related to compliance, overhead, and duplication of efforts existing in AVX's organization. Furthermore, by centralizing its non-U.S. operations under a holding company, AVX will be better positioned to finance its global operations.

The ultimate goal of the above-described restructuring is to create an aligned global organization that complements and facilitates the operational management of AVX.

B. AVX's Corporate Tax Department

Emile Artus, Director of Taxes, is the head of the corporate tax department at AVX, and as such bears responsibility for including any GRAs in AVX's consolidated tax return. Mr. Artus was not familiar with the GRA rules at the time the FY 2012 return was filed. AVX had never been required to file a GRA prior to the March 2012 reorganization of Elco.

Mr. Artus is a Certified Public Accountant with over 25 years of experience in tax compliance. He was appointed to the position of Director of Taxes at AVX on April 1, 2011. His positions prior to his current position at AVX were with small, domestic public and private companies that did not have the complex international operations of AVX. Mr. Artus has extensive experience in domestic tax compliance and in tax accounting. Prior to joining AVX, his international tax compliance work was confined to the preparation of information returns (e.g., Forms 5471, 8858, etc).

Mr. Artus had some experience in one of his former positions with the sale of foreign subsidiaries to a third party, but there was no reporting required under IRC Section 367 as a result of those transactions. Moreover, any unusual tax compliance would have been prepared for that former employer (the selling company) by external tax consultants. At none of his former positions had there been any transfer of a foreign subsidiary to another member of the same corporate group, and the above transaction at AVX was the first such transaction to which Mr. Artus has had exposure during his career.

AVX decided to enter into the transaction at issue upon the engagement of PricewaterhouseCoopers LLP ("PwC") on July 12, 2011. At that time, Mr. Artus had assumed the position of Director of Taxes at AVX, but was still, with the assistance of the former Director who had been retained as a consultant, transitioning into the position. That transition continued up to and including the reorganization of Elco which was completed on March 12, 2012.

Additionally, during the course of the reorganization of Elco, AVX's tax department experienced a 100 percent turnover of the entire AVX corporate tax group during the year prior to March 12, 2012.

Because Mr. Artus was working with many new technical international tax issues relating to the reorganization of Elco, he relied heavily on PwC for tax advice.

C. Events Surrounding the Failure to File the GRAs with the Original Tax Return

PwC provided AVX with a work-plan prior to March 2012 that sets forth specific instructions that AVX needed to prepare and file a GRA relating to reorganization of Elco. AVX and Mr. Artus, however, were relying heavily on PwC for advice and expected PwC to remind them of any filings that had to be made as a result of the reorganization. The notation in PwC's work-plan regarding the requirement to file a GRA is located in the section that discusses that actual transaction rather than in the final section of the work plan entitled "Documentation." The Documentation section discusses "required reorganization statements for Forms 5471" in general terms and states expressly that PwC will prepare the reorganization statements required under Treas. Reg. §1.351-3 for AVX to file with its FY 2012 return.

PwC, however, believed it was not engaged to complete the GRAs and that AVX understood it must prepare and file the agreements. PwC expected that AVX would complete the agreements as part of AVX's annual tax compliance work for the FY 2012 tax year. Accordingly, PwC did not ask AVX prior to December 15, 2012, the extended due date of AVX's FY 2012 Form 1120, whether AVX had filed the GRAs with its return.

Mr. Artus and AVX's corporate tax group believed that the Form 1120 as filed satisfied all reporting requirements for the Elco reorganization because (1) all Forms 5471, *Information Return of U.S. Persons With Respect to Certain Foreign Corporations*, were filed with the required disclosure of the Elco reorganization on the appropriate Schedules O, and (2) the Documentation section of PwC's work-plan did not state that GRAs must be filed.

## II.     Discovery in January 2013 of the Failure to File GRAs in the Original FY 2012 Tax Return

In late January 2013, Mr. Artus was contacted by PwC regarding required FY 2012 disclosures needed related to the Elco reorganization. It was discovered that GRAs related to the reorganization, in addition to other required disclosures, had not been timely filed in December 2012 with the original FY 2012 federal tax return.

PwC was immediately engaged to prepare such required disclosures, and disclosures thus prepared were furnished to AVX for their inclusion in an amended tax return. During the preparation process, draft copies of the GRAs were circulated by PwC, and revisions returned by the AVX tax department, but AVX has no record of having received final versions of such GRAs from PwC.

The original FY 2012 amended return, which included all required disclosures supplied in final form by PwC, was filed on March 13, 2013. Although the filing included appropriate Forms 8838, which provided consent to extend the assessment of any tax related to the Elco reorganization to March 31, 2020, the related GRAs themselves were not included in this original amended return, although AVX's intent was that they be so included.

## III.     Discovery in December 2015 of the Failure to File GRAs in the Original FY 2012 Amended Tax Return

In December 2015, J. Rowena Cheek, an IRS agent then conducting the international portion of a tax audit of the AVX group for its tax years ended March 31, 2013 and 2014

(FYs 2013 and 2014, respectively), contacted the AVX tax department to request the GRAs related to the Elco restructuring through the use of an IDR. AVX responded by furnishing the documents that were received in final form from PWC and filed with the original amended return in March 2013, which did not include the GRAs not filed with such original amended return but which did include related Forms 8838.

Upon being informed by Ms. Cheek of the missing GRAs, AVX engaged PWC to complete such required and necessary GRAs that were omitted from the original 1120X, and these documents were received in February 2016. Since AVX at that time was still under audit for its FYs 2013 and 2014, it requested guidance from IRS agents assigned to the audit, including Ms. Cheek, as to how to effect prompt filing of required disclosures not previously filed.

On March 14, 2016, AVX was instructed by Ms. Cheek to file amended returns with the necessary GRAs and statements, to include an amended return for FY 2012 containing GRAs not yet filed, and amended returns for FYs 2013 and 2014 to containing required annual GRA certifications not yet filed. All amended returns were to include required statements requesting relief under IRC Sections 367(a) and 6038B.

Attached to this amended return are all above documents as requested by the IRS and originally required to be filed as a part of the AVX group's original FY 2012 federal tax return.

AVX Corporation, EIN: ▮▮▮▮
AVX Development Inc., EIN: ▮▮▮▮
Form 1120X for Tax Year Ended March 31, 2012

### STATEMENT OF RELIEF FOR REASONABLE CAUSE UNDER TREAS. REG. §§ 1.6038B-1(f) and 1.6038B-1T(f)

#### Relief for Late Filed GRA Based on Reasonable Cause

A.    Gain Recognition Agreement and Regulatory Provision for Reasonable Cause Relief

Treas. Reg. §1.6038B-1T(f)(3) provides relief to a taxpayer that has failed to file a Gain Recognition Agreement ("GRA") if the taxpayer is able to show that such failure was due to reasonable cause and not willful neglect, and if the person files the agreement and all other required documents as he becomes aware of the failure.

In determining whether a failure to file a GRA is due to reasonable cause and not to willful neglect, standards for relief from tax penalties and additions to tax should be considered.

B.    Standards for Relief According to the Internal Revenue Manual

The Internal Revenue Manual ("IRM") sets forth standards for reasonable cause relief. IRM 20.1.1.2.1(6) states that "[c]ompliance is achieved when a taxpayer makes a good faith effort to meet the tax obligations defined by the Internal Revenue Code." In addition, IRM 20.1.1.3.2(1) states that a "taxpayer may establish reasonable cause by providing facts and circumstances showing that they exercised ordinary business care and prudence (taking that degree of care that a reasonably prudent person would exercise), but nevertheless were unable to comply with the law." IRM 20.1.1.3.2.2.6(4) states that "the taxpayer may have reasonable cause for noncompliance due to ignorance of the law if: [A.] A reasonable and good faith effort was made to comply with the law, or [B.] The taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement." IRM § 4.75.22.4.2(11) states that "A penalty relief statement is acceptable if it: [i] appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return, [and, (ii)] clearly indicates no willful intent to disobey the taxing statutes."

C.    AVX Satisfies the Criteria for Reasonable Cause Set Forth in the IRM

Pursuant to IRC Section 351, on March 12, 2012, AVX Corporation ("AVX") and AVX Development, Inc. transferred 89.1 and 0.9 percent interest, respectively, in Elco Europe, GmbH ("Elco") to AVX Koninkrijk der Nederlanden CV ("AVX CV") in exchange for interests constituting 99.0 and 1.0 percent, respectively, of the voting power and value of AVX CV. The transaction was one component in AVX's implementation of a European holding company structure to align its businesses along mainly geographic lines to allow for greater flexibility with respect to global strategic planning across business lines and geographic markets. AVX was advised as to this implementation by Pricewaterhouse Coopers LLP ("PwC").

The advice provided by PwC included a work plan that specifically set forth that AVX needed to prepare and file a GRA relating to the reorganization of Elco. AVX's Director of Taxes, Emile Artus, and AVX relied heavily on PwC for advice and believed PwC would tell AVX of all required forms and agreements that should be included with the AVX U.S. consolidated group's ("AVX Group") Form 1120 filed for its tax year ended March 31, 2012 ("FY 2012").

The notation to file GRAs was located in that section of PwC's work-plan that listed the procedural steps required to effect the reorganization of Elco. The requirement that GRAs be filed was not specifically mentioned in the final section of the work plan, "Documentation," which only listed "required reorganization statements for Forms 5471."

While Mr. Artus is a Certified Public Accountant with over 25 years of experience in tax compliance, the positions he held before becoming AVX's Director of Taxes had been with smaller domestic public and private companies that did not have the extensive international operations of AVX. His experience was primarily with domestic tax compliance and tax accounting. His only previous international tax experience had been in preparation of information returns (Forms 5471, 8858, etc). Prior to joining AVX, Mr. Artus had not worked with the transfer of a foreign subsidiary to another member of the same corporate group.

Prior to January 2013, PwC had understood that it was not engaged to prepare the GRAs and believed AVX would complete the agreements as part of AVX's annual tax compliance work for its FY 2012. Accordingly, PwC did not follow up with AVX regarding the filing of the GRAs until January 2013.

As a result, when AVX filed its FY 2012 consolidated Form 1120, the company did not realize that the GRAs at issue should have been attached. Furthermore, the original amended 1120X, filed on March 13, 2013 to include certain required FY 2012 disclosures related to the Elco reorganization, did not contain the actual GRAs, as PWC did not provide those statements in final form as part of the amended return process.

D.    AVX Acted Promptly Upon Discovery of Missed GRA Filings

Treas. Reg. § 1.6038B-1T(f)(ii)(A) states that:

> A U.S. transferor's statement the the failure to timely comply was due to reasonable cause and not willful neglect will be considered only if, promptly after the U.S. transferor becomes aware of the failure, an amended return is filed for the taxable year to which the failure relates that includes the information that should have been included with the original return for such taxable year or that otherwise complies with the rules of this section, and that includes a written statement explaining the reasons for the failure to timely comply.

In December 2015, J. Rowena Cheek, an Internal Revenue Service ("IRS") agent then conducting the international portion of a tax audit of the AVX group for its tax years ended March 31, 2013 and 2014 (FYs 2013 and 2014, respectively), contacted the AVX tax department to request the GRAs related to the Elco restructuring through an IDR. AVX responded by furnishing the documents that were received in final form from PWC and filed with the original amended return in March 2013, which did not include the GRAs not filed with such original amended return but which did include related Forms 8838.

Upon being informed by Ms. Cheek of the missing GRAs, AVX engaged PwC to complete such required and necessary GRAs that were omitted from the original 1120X, and these documents were received in February 2016. Since AVX at that time was still under audit of its FYs 2013 and 2014 federal tax returns, it requested guidance from IRS agents assigned to the audit, including Ms. Cheek, as to how to effect prompt filing of required disclosures not previously filed.

On March 14, 2016, AVX was instructed by Ms. Cheek to file amended returns with the necessary GRAs and statements, to include an amended return for FY 2012 containing GRAs not yet filed, and amended returns for FYs 2013 and 2014 to containing required

2

GRA Annual Certifications not yet filed. All amended returns were to include required statements requesting relief under IRC Sections 367(a) and 6038B.

Attached to this amended return are all above documents as requested by the IRS and originally required to be filed as a part of the AVX group's original FY 2012 federal tax return. Pursuant to Treas. Reg. § 1.367(a)-8(p)(2), a copy of the previously filed Forms 8838 related to such GRAs is also included.

AVX understands that, pursuant to IRC Section 6501(c)(8)(A) and Treas. Reg. § 1.6038B-1(f)(1)(ii), since this amended return contains "information required to be reported" as defined by the above authority, the time for assessment of any tax imposed related to such filing shall not expire before a date three (3) years after the filing of this amended return with the IRS.

AVX's actions, as detailed above, consistently demonstrate reasonable cause, good faith, and the absence of a willful failure to file the required GRAs. AVX made a good faith effort to comply with U.S. tax law by engaging PwC to advise it with respect to the U.S. tax filing obligations associated with the transfer of Elco to AVX CV. AVX has also satisfied the "promptly after" standard of Treas. Reg. § 1.6038B-1T(f)(3)(ii)(A) through the filing of this amended return a reasonable time after becoming aware of its omissions in previous filings, and shortly after IRS guidance on filing such return was provided. The absence of willful neglect herein established would also satisfy the revised standard for relief provided in Proposed Reg. § 1.367(a)-3(f)(2).

AVX also satisfies the purpose and rationale for late election relief. As expressed by the Ninth Circuit Court of Appeals, "the relevant inquiry is whether allowing the late election gives the taxpayer some advantage that was not available on the due date [of the election]." Since there have been no triggering events since the date of the Outbound Stock Transfers, and there will be no triggering event if reasonable cause relief is granted, AVX gains no advantage by being allowed to file the GRAs now rather than with its original FY 2012 U.S. federal income tax return.

There is no prejudice to the government under the circumstances. If the election had been timely made, the effect would be that the gain would need to be recognized if a triggering event occurred within the next five years. No such triggering transaction has occurred. Thus, no tax liability would have been generated if the GRAs had been timely filed. If filed now, exactly the same tax liability, zero, would result. At either time, no taxes would be payable pursuant to IRC § 367(a), and therefore there is no prejudice to the government in granting late election relief.

Treas. Reg. § 1.6038B-1T(f)(3)(ii)(B) also imposes a notice requirement in order for a taxpayer to avail itself of relief. The relevant passage is as follows:

> If any taxable year of the U.S. transferor is under examination when the amended return is filed, a copy of the amended return and any information required to be included with such return must be delivered to the [IRS] personnel conducting the examination.

In accordance with the above requirement, a copy of this amended return and all attachments thereto is being provided at the same time as it is being filed, to each IRS auditor currently engaged in an examination of AVX's FYs 2013 and 2014 federal tax returns.

Accordingly, pursuant to Treas. Reg. § 1.6038B-1T(f), AVX respectfully requests that the IRS accept the GRAs, Form 8838, and the amended return as filed; that it find that the failure to timely comply was due to reasonable cause and not willful neglect; and that accordingly such failure should be deemed not to have occurred, and thus the failure to comply penalty set by Treas. Reg. § 1.6038B-1(f)(1) should not be assessed under the circumstances.

| Form **1120X** (Rev. January 2011) Department of the Treasury Internal Revenue Service | **Amended U.S. Corporation Income Tax Return** | OMB No. 1545-0132 |
|---|---|---|

**For tax year ending** ▶ 03/2013
(Enter month and year.)

| Please Type or Print | Name |
|---|---|

AVX Corporation

Number, street, and room or suite no. (If a P.O. box, see instructions.)

1 AVX Boulevard

City or town, state, and ZIP code

Fountain Inn          SC          29644

**Employer Identification number** [redacted]

**Telephone number** (optional)

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Ogden, UT

### Fill in applicable items and use Part II on the back to explain any changes

| **Part I** | Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change— increase or (decrease)— explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income | 1 | 177,314,816 | | 177,314,816 |
| 2 | Total deductions | 2 | 82,274,746 | | 82,274,746 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 95,040,070 | 0 | 95,040,070 |
| 4 | Total tax | 4 | 20,051,739 | | 20,051,739 |

**Payments and Credits** (see instructions)

| | | | | | |
|---|---|---|---|---|---|
| 5 a | Overpayment in prior year allowed as a credit | 5a | 7,454,421 | | 7,454,421 |
| b | Estimated tax payments | 5b | 15,000,000 | | 15,000,000 |
| c | Refund applied for on Form 4466 | 5c | | | |
| d | Subtract line 5c from the sum of lines 5a and 5b | 5d | 22,454,421 | 0 | 22,454,421 |
| e | Tax deposited with Form 7004 | 5e | | | |
| f | Credit from Form 2439 | 5f | | | |
| g | Credit for federal tax on fuels and other refundable credits | 5g | | | |
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | | | |
| 7 | Add lines 5d through 6, column (c) | 7 | | | 22,454,421 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 2,402,682 |
| 9 | Subtract line 8 from line 7 | 9 | | | 20,051,739 |

**Tax Due or Overpayment** (see instructions)

| | | | |
|---|---|---|---|
| 10 | Tax due. Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" ▶ | 10 | 0 |
| 11 | Overpayment. Subtract line 4, column (c), from line 9 ▶ | 11 | 0 |
| 12 | Enter the amount of line 11 you want: Credited to 20 __ 16 **Estimated tax** ▶          Refunded ▶ | 12 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer          Date 5/2/2016          Title VP, CFO & Treasurer

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For Paperwork Reduction Act Notice, see instructions.

HTA

Form **1120X** (Rev. 1-2011)

Form 1120X (Rev. 1-2011)          AVX Corporation                                                    Page **2**

**Part II**   **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** in the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** in the instructions, and check here . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

AVX Corporation is amending its 3/31/2013 federal Form 1120 for the following reasons:

1) To include a statement of non-willful intent and request for relief under Regulation Section 1.367(a)-8(p) for late-filed Gain Recognition Agreement Annual Certification for AVX Corporation and AVX Development Incorporated.

2) To include a statement of relief for reasonable cause under Regulation Section 1.6038B-1(f) and 1.6038B-1T(f) for late-filed Gain Recognition Agreement Annual Certification for AVX Corporation and AVX Development Incorporated.

3) To include Gain Recognition Agreement Annual Certification under Regulation Section 1.367(a)-8(g).

Form **1120X** (Rev. 1-2011)

F.E.I. # ▮▮▮▮▮▮▮
**Attachment to Consolidated Form 1120**
**For Year Ended March 31, 2013**

---

Gain Recognition Agreement Annual Certification under Reg. § 1.367(a)-8(g)

---

AVX Corporation and Subsidiaries hereby provides the annual certification as required by Reg. § 1.367(a)-8(g), as follows:

Original Gain Recognition Agreement (GRA):

Date of transaction:  March 12, 2012 (taxable year ended March 31, 2012)
Transferors:  AVX Corporation, EIN ▮▮▮▮▮▮ and AVX Development Corp., EIN ▮▮

Transferee:  AVX Koninkrijk der Nederlanden, EIN ▮▮▮▮▮▮
Transferred corporation:  Elco Europe GmbH (90% beneficial interest)

With regard to the above-referenced GRA and the taxable year ended March 31, 2013, the taxpayer certifies as follows:

1. A gain recognition event has not occurred during the taxable year.

2. No event occurred during such taxable year that has terminated or reduced the amount of gain subject to the GRA.

3. There has been no disposition of assets not in the ordinary course of business by the above transferred corporation during such taxable year.

AVX Corporation, EIN: ████
AVX Development Inc., EIN: ████
Form 1120X for Tax Year Ended March 31, 2013

### STATEMENT OF NON-WILLFUL INTENT AND REQUEST FOR RELIEF UNDER TREAS. REG. § 1.367(a)-8(p) FOR LATE-FILED GAIN RECOGNITION AGREEMENT ANNUAL CERTIFICATION

On December 13, 2013, AVX Corporation ("AVX" or "the company") filed Form 1120, *U.S. Corporation Income Tax Return*, for the AVX consolidated group's ("AVX group") tax year ended March 31, 2013 ("FY 2013"). The company's original return did not include a required document related to the transfer of shares in a foreign corporation.

This Form 1120X, *Amended U.S. Corporation Income Tax Return* ("the amended return"), is being filed, in part, to provide the Internal Revenue Service ("IRS") with an original Gain Recognition Agreement Annual Certification ("GRA certification") for AVX and AVX Development Inc., which was inadvertently not attached to the original return for FY 2013.

AVX Development Inc. is a member of the AVX group.

This amended return is being filed as soon as possible following the discovery in December 2015 that the GRA certification was inadvertently not attached to the original return. AVX is under IRS examination for the tax year (FY 2013) for which non-willful intent relief is being requested, and is filing such amended return at the request of and with the agreement of IRS agents conducting such examination. Such IRS agents are each being furnished a complete copy of this amended return as filed.

Based on the facts set forth below, the GRA certification was not timely filed due to reasonable cause and not due to willful neglect. AVX respectfully requests that the filing of such GRA certification be treated as timely made, and that the failure to file the GRA certification with AVX's original Form 1120 not be considered a triggering event under Reg. § 1.367(a)-8(j).

For transfers occurring after March 13, 2009, Treas. Reg. §§ 1.367(a)-8(p)(1) and (2) provide relief to a taxpayer that fails to file a timely GRA and/or GRA certification, if the taxpayer is able to show that such failure is due to reasonable cause and not willful neglect, and if the person files the required document(s) as soon as he becomes aware of the failure. In satisfaction of those requirements, AVX is submitting the required GRA certification to the IRS.

AVX understands that, pursuant to IRC Section 6501(c)(8)(A) and Treas. Reg. § 1.6038B-1(f)(1)(ii), since this amended return contains "information required to be reported" as defined by the above authority, the time for assessment of any tax imposed related to such filing shall not expire before a date three (3) years after the filing of this amended return with the IRS.

I.   **Background**

   A.   The Transfers by AVX and AVX Development, Inc. to AVX CV

AVX and AVX Development Inc. owned 99.1 and 0.9 percent interests, respectively, in Elco Europe GmbH ("Elco"), a German *Gesellschaft mit beschränkter Haftung* that is treated as a corporation for U.S. federal income tax purposes. Such total 100 percent interest was acquired on April 1, 1995. Pursuant to IRC Section 351, on March 12, 2012, AVX and AVX Development, Inc. transferred 89.1 and 0.9 percent interest, respectively, in Elco to AVX Koninkrijk der Nederlanden CV ("AVX CV") in exchange for interests constituting 99.0 and 1.0 percent, respectively, of the voting power and value of AVX CV.

AVX CV is a Dutch *Commanditaire Vennotschap* that is treated as a corporation for U.S. federal income tax purposes. However, for Dutch purposes it is a partnership and therefore needs to have two owners. Accordingly, AVX structured the transfers of interests in Elco to AVX CV so that AVX would have a 99 percent ownership interest in AVX CV and AVX Development Inc. would have a 1 percent ownership interest.

That transaction was one component in AVX's implementation of a European holding company structure to align its businesses along mainly geographic lines to allow for greater flexibility with respect to global strategic planning across business lines and geographic markets. It is expected that the European holding company will hold many of AVX's foreign subsidiaries. Such a structure will increase business efficiencies by reducing administrative costs related to compliance, overhead, and duplication of efforts existing in AVX's organization. Furthermore, by centralizing its non-U.S. operations under a holding company, AVX will be better positioned to finance its global operations.

The ultimate goal of the above-described restructuring is to create an aligned global organization that complements and facilitates the operational management of AVX.

B.   AVX's Corporate Tax Department

Emile Artus, Director of Taxes, is the head of the corporate tax department at AVX, and as such bears responsibility for including any GRAs and/or GRA certifications in AVX's consolidated tax return. Mr. Artus was not familiar with the GRA rules at the time the FY 2012 return was filed. AVX had never been required to file a GRA or any related certification prior to the March 2012 reorganization of Elco.

Mr. Artus is a Certified Public Accountant with over 25 years of experience in tax compliance. He was appointed to the position of Director of Taxes at AVX on April 1, 2011. His positions prior to his current position at AVX were with small, domestic public and private companies that did not have the complex international operations of AVX. Mr. Artus has extensive experience in domestic tax compliance and in tax accounting. Prior to joining AVX, his international tax compliance work was confined to the preparation of information returns (e.g., Forms 5471, 8858, etc).

Mr. Artus had some experience in one of his former positions with the sale of foreign subsidiaries to a third party, but there was no reporting required under IRC Section 367 as a result of those transactions. Moreover, any unusual tax compliance would have been prepared for that former employer (the selling company) by external tax consultants. At none of his former positions had there been any transfer of a foreign subsidiary to another member of the same corporate group, and the above transaction at AVX was the first such transaction to which Mr. Artus has had exposure during his career.

AVX decided to enter into the transaction at issue upon the engagement of PricewaterhouseCoopers LLP ("PwC") on July 12, 2011. At that time, Mr. Artus had assumed the position of Director of Taxes at AVX, but was still, with the assistance of the former Director who had been retained as a consultant, transitioning into the position. That transition continued up to and including the reorganization of Elco which was completed on March 12, 2012.

Additionally, during the course of the reorganization of Elco, AVX's tax department experienced a 100 percent turnover of the entire AVX corporate tax group during the year prior to March 12, 2012.

Because Mr. Artus was working with many new technical international tax issues relating to the reorganization of Elco, he relied heavily on PwC for tax advice.

2

C.  Events Surrounding the Failure to File the GRAs with the Original Tax Return

PwC provided AVX with a work-plan prior to March 2012 that sets forth specific instructions that AVX needed to prepare and file a GRA relating to reorganization of Elco. AVX and Mr. Artus, however, were relying heavily on PwC for advice and expected PwC to remind them of any filings that had to be made as a result of the reorganization.  The notation in PwC's work-plan regarding the requirement to file a GRA is located in the section that discusses that actual transaction rather than in the final section of the work plan entitled "Documentation."  The Documentation section discusses "required reorganization statements for Forms 5471" in general terms and states expressly that PwC will prepare the reorganization statements required under Treas. Reg. §1.351-3 for AVX to file with its FY 2012 return.

PwC, however, believed it was not engaged to complete the GRAs and that AVX understood it must prepare and file the agreements.  PwC expected that AVX would complete the agreements as part of AVX's annual tax compliance work for the FY 2012 tax year.  Accordingly, PwC did not ask AVX prior to December 15, 2012, the extended due date of AVX's Form 1120, whether AVX had filed the GRAs with its return.

Mr. Artus and AVX's corporate tax group believed that the Form 1120 as filed satisfied all reporting requirements for the Elco reorganization because (1) all Forms 5471, *Information Return of U.S. Persons With Respect to Certain Foreign Corporations*, were filed with the required disclosure of the Elco reorganization on the appropriate Schedules O, and (2) the Documentation section of PwC's work-plan does not state that GRAs must be filed.

II.  **Discovery in January 2013 of the Failure to File GRAs in the Original FY 2012 Tax Return**

In late January 2013, Mr. Artus was contacted by PwC regarding required FY 2012 disclosures needed related to the Elco reorganization.  It was discovered that GRAs related to the reorganization, in addition to other required disclosures, had not been timely filed in December 2012 with the original FY 2012 federal tax return.

PwC was immediately engaged to prepare such required disclosures, and disclosures thus prepared were furnished to AVX for their inclusion in an amended tax return.  During the preparation process, draft copies of the GRAs were circulated by PwC, and revisions returned by the AVX tax department, but AVX has no record of having received final versions of such GRAs from PwC.

The original FY 2012 amended return, which included all required disclosures supplied in final form by PwC, was filed on March 13, 2013.  Although the filing included appropriate Forms 8838, which provided consent to extend the assessment of any tax related to the Elco reorganization to March 31, 2020, the related GRAs themselves were not included in this original amended return, although AVX's intent was that they be so included.

III.  **Discovery in December 2015 of the Failure to File GRAs in the Original FY 2012 Amended Tax Return, and GRA Certifications in the Original FY 2013 and 2014 Tax Returns**

In December 2015, J. Rowena Cheek, an IRS agent then conducting the international portion of a tax audit of the AVX group for its tax years ended March 31, 2013 and 2014 (FYs 2013 and 2014, respectively), contacted the AVX tax department to request the GRAs related to the Elco restructuring, as well as required GRA certifications for each

3

intervening tax year, through the use of an IDR. AVX responded by furnishing the documents that were received in final form from PWC and filed with the original FY 2012 amended return in March 2013, which did not include the GRAs not filed with such original amended return but which did include related Forms 8838.

At that same time, AVX discovered that, since such GRAs were not filed as intended with either the FY 2012 original or first amended returns, required GRA certifications were also inadvertently not filed with either its FY 2013 or its FY 2014 returns. Since AVX at that time was still under audit of its FYs 2013 and 2014 federal tax returns, it requested guidance from IRS agents assigned to the audit, including Ms. Cheek, as to how to effect prompt filing of required disclosures not previously filed.

On March 14, 2016, AVX was instructed by Ms. Cheek to file amended returns with the necessary GRAs, GRA certifications, and statements, to include an amended return for FY 2012 containing GRAs not yet filed, and amended returns for FYs 2013 and 2014 containing required annual GRA certifications not yet filed. All amended returns were to include required statements requesting relief under IRC Sections 367(a) and 6038B.

Attached to this amended return is the GRA certification as requested by the IRS and originally required to be filed as a part of the AVX group's original FY 2013 federal tax return.

4

AVX Corporation, EIN: ▮▮▮▮▮▮
AVX Development Inc., EIN: ▮▮▮▮▮▮
Form 1120X for Tax Year Ended March 31, 2013

### STATEMENT OF RELIEF FOR REASONABLE CAUSE UNDER TREAS. REG. §§ 1.6038B-1(f) and 1.6038B-1T(f)

#### Relief for Late Filed GRA Annual Certification Based on Reasonable Cause

A.     Gain Recognition Agreement and Regulatory Provision for Reasonable Cause Relief

Treas. Reg. §1.6038B-1T(f)(3) provides relief to a taxpayer that has failed to file a Gain Recognition Agreement ("GRA") if the taxpayer is able to show that such failure was due to reasonable cause and not willful neglect, and if the person files the agreement and all other required documents as he becomes aware of the failure.

In determining whether a failure to file a GRA Annual Certification is due to reasonable cause and not to willful neglect, standards for relief from tax penalties and additions to tax should be considered.

B.     Standards for Relief According to the Internal Revenue Manual

The Internal Revenue Manual ("IRM") sets forth standards for reasonable cause relief. IRM 20.1.1.2.1(6) states that "[c]ompliance is achieved when a taxpayer makes a good faith effort to meet the tax obligations defined by the Internal Revenue Code." In addition, IRM 20.1.1.3.2(1) states that a "taxpayer may establish reasonable cause by providing facts and circumstances showing that they exercised ordinary business care and prudence (taking that degree of care that a reasonably prudent person would exercise), but nevertheless were unable to comply with the law." IRM 20.1.1.3.2.2.6(4) states that "the taxpayer may have reasonable cause for noncompliance due to ignorance of the law if: [A.] A reasonable and good faith effort was made to comply with the law, or [B.] The taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement." IRM § 4.75.22.4.2(11) states that "A penalty relief statement is acceptable if it: [i] appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return, [and, (ii)] clearly indicates no willful intent to disobey the taxing statutes."

C.     AVX Satisfies the Criteria for Reasonable Cause Set Forth in the IRM

Pursuant to IRC Section 351, on March 12, 2012, AVX Corporation ("AVX") and AVX Development, Inc. transferred 89.1 and 0.9 percent interest, respectively, in Elco Europe, GmbH ("Elco") to AVX Koninkrijk der Nederlanden CV ("AVX CV") in exchange for interests constituting 99.0 and 1.0 percent, respectively, of the voting power and value of AVX CV. The transaction was one component in AVX's implementation of a European holding company structure to align its businesses along mainly geographic lines to allow for greater flexibility with respect to global strategic planning across business lines and geographic markets. AVX was advised as to this implementation by Pricewaterhouse Coopers LLP ("PwC").

The advice provided by PwC included a work plan that specifically set forth that AVX needed to prepare and file a GRA relating to the reorganization of Elco. AVX's Director of Taxes, Emile Artus, and AVX relied heavily on PwC for advice and believed PwC would tell AVX of all required forms and agreements that should be included with the AVX U.S. consolidated group's ("AVX Group") Form 1120 filed for its tax year ended March 31, 2012 ("FY 2012").

The notation to file GRAs was located in that section of PwC's work-plan that listed the procedural steps required to effect the reorganization of Elco. The requirement that GRAs be filed was not specifically mentioned in the final section of the work plan, "Documentation," which only listed "required reorganization statements for Forms 5471."

While Mr. Artus is a Certified Public Accountant with over 25 years of experience in tax compliance, the positions he held before becoming AVX's Director of Taxes had been with smaller domestic public and private companies that did not have the extensive international operations of AVX. His experience was primarily with domestic tax compliance and tax accounting. His only previous international tax experience had been in preparation of information returns (Forms 5471, 8858, etc). Prior to joining AVX, Mr. Artus had not worked with the transfer of a foreign subsidiary to another member of the same corporate group.

Prior to January 2013, PwC had understood that it was not engaged to prepare the GRAs and believed AVX would complete the agreements as part of AVX's annual tax compliance work for its FY 2012. Accordingly, PwC did not follow up with AVX regarding the filing of the GRAs until January 2013.

As a result, when AVX filed its FY 2012 consolidated Form 1120, the company did not realize that the GRAs at issue should have been attached. Furthermore, the original amended 1120X, filed on March 13, 2013 to include certain required FY 2012 disclosures related to the Elco reorganization, did not contain the actual GRAs, as PWC did not provide those statements in final form as part of the amended return process. In addition, tax returns filed for its FYs 2013 and 2014 did not include the required GRA Annual Certification for such years.

D.     AVX Acted Promptly Upon Discovery of Missed GRA Filings

Treas. Reg. § 1.6038B-1T(f)(3)(ii)(A) states that:

> A U.S. transferor's statement that the failure to timely comply was due to reasonable cause and not willful neglect will be considered only if, promptly after the U.S. transferor becomes aware of the failure, an amended return is filed for the taxable year to which the failure relates that includes the information that should have been included with the original return for such taxable year or that otherwise complies with the rules of this section, and that includes a written statement explaining the reasons for the failure to timely comply.

In early December 2015, J. Rowena Cheek, an Internal Revenue Service ("IRS") agent then conducting the international portion of a tax audit of the AVX group for its tax years ended March 31, 2013 and 2014 (FYs 2013 and 2014, respectively), contacted the AVX tax department to request the GRAs and Annual Certifications related to the Elco restructuring through an IDR request. AVX responded by furnishing the documents that were received in final form from PWC and filed with the original amended return in March 2013, which did not include the GRAs and Annual Certifications not filed with such original amended return and FY 2013 and FY 2014 original returns but which did include related Forms 8838.

Upon being informed by Ms. Cheek of the missing GRAs, AVX engaged PwC to complete such required and necessary GRAs that were omitted from the original 1120X, and these documents were received in February 2016. Since AVX at that time was still under audit of its FYs 2013 and 2014 federal tax returns, it requested guidance from IRS agents assigned to the audit, including Ms. Cheek, as to how to effect prompt filing of required disclosures not previously filed.

On March 14, 2016, AVX was instructed by Ms. Cheek to file amended returns with the necessary GRAs and statements, to include an amended return for FY 2012 containing

2

GRAs not yet filed, and amended returns for FYs 2013 and 2014 containing required GRA Annual Certifications not yet filed. All amended returns were to include required statements requesting relief under IRC Sections 367(a) and 6038B.

Attached to this amended return are all above documents as requested by the IRS and originally required to be filed as a part of the AVX group's original FY 2013 federal tax return. In addition, immediately upon being informed of the need to file GRA Annual Certifications, AVX included such Annual Certification in its FY 2015 tax return, which was filed timely on December 15, 2015.

AVX understands that, pursuant to IRC Section 6501(c)(8)(A) and Treas. Reg. § 1.6038B-1(f)(1)(ii), since this amended return contains "information required to be reported" as defined by the above authority, the time for assessment of any tax imposed related to such filing shall not expire before a date three (3) years after the filing of this amended return with the IRS.

AVX's actions, as detailed above, consistently demonstrate reasonable cause, good faith, and the absence of a willful failure to file the required GRAs and related Annual Certifications. AVX made a good faith effort to comply with U.S. tax law by engaging PwC to advise it with respect to the U.S. tax filing obligations associated with the transfer of Elco to AVX CV. AVX has also satisfied the "promptly after" standard of Treas. Reg. § 1.6038B-1T(f)(3)(ii)(A) through the filing of this amended return a reasonable time after becoming aware of its omissions in previous filings, and shortly after IRS guidance on filing such return was provided. The absence of willful neglect herein established would also satisfy the revised standard for relief provided in Proposed Reg. § 1.367(a)-3(f)(2).

AVX also satisfies the purpose and rationale for late election relief. As expressed by the Ninth Circuit Court of Appeals, "the relevant inquiry is whether allowing the late election gives the taxpayer some advantage that was not available on the due date [of the election]." Since there have been no triggering events since the date of the Outbound Stock Transfers, and there will be no triggering event if reasonable cause relief is granted, AVX gains no advantage by being allowed to file the GRA Annual Certifications now rather than with its original FY 2013 U.S. federal income tax return.

There is no prejudice to the government under the circumstances. If the election had been timely made, the effect would be that the gain would need to be recognized if a triggering event occurred within the next five years. No such triggering transaction has occurred. Thus, no tax liability would have been generated if the GRA Annual Certifications had been timely filed. If filed now, exactly the same tax liability, zero, would result. At either time, no taxes would be payable pursuant to IRC § 367(a), and therefore there is no prejudice to the government in granting late election relief.

Treas. Reg. § 1.6038B-1T(f)(3)(ii)(B) also imposes a notice requirement in order for a taxpayer to avail itself of relief. The relevant passage is as follows:

> If any taxable year of the U.S. transferor is under examination when the amended return is filed, a copy of the amended return and any information required to be included with such return must be delivered to the [IRS] personnel conducting the examination.

In accordance with the above requirement, a copy of this amended return and all attachments thereto is being provided at the same time as it is being filed, to each IRS auditor currently engaged in an examination of AVX's FYs 2013 and 2014 federal tax returns.

Accordingly, pursuant to Treas. Reg. § 1.6038B-1T(f), AVX respectfully requests that the IRS accept the GRA Annual Certification and the amended return as filed; that it find that the failure to timely comply was due to reasonable cause and not willful neglect and that accordingly such failure should be deemed not to have occurred, and thus the failure to comply penalty set by Treas. Reg. § 1.6038B-1(f)(1) should not be assessed under the circumstances.

Form **1120X**
(Rev. January 2011)
Department of the Treasury
Internal Revenue Service

**Amended U.S. Corporation Income Tax Return**

OMB No. 1545-0132

**For tax year ending**
▶ .......... 03/2014 ..........
(Enter month and year.)

| | |
|---|---|
| Name | Employer identification number |
| AVX Corporation | ▇▇▇▇▇▇ |
| Number, street, and room or suite no. (If a P.O. box, see instructions.) | |
| 1 AVX Boulevard | |
| City or town, state, and ZIP code | Telephone number (optional) |
| Fountain Inn                SC      29644 | |

Please Type or Print

Enter name and address used on original return (If same as above, write "Same.")

Same

Internal Revenue Service Center where original return was filed ▶ Ogden, UT

**Fill in applicable items and use Part II on the back to explain any changes**

| **Part I** | Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change—Increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income . . . . . . . . . . . . . . | 1 | 172,429,239 | | 172,429,239 |
| 2 | Total deductions . . . . . . . . . . . . | 2 | 322,008,342 | | 322,008,342 |
| 3 | Taxable income. Subtract line 2 from line 1 . . . . . | 3 | -149,579,103 | 0 | -149,579,103 |
| 4 | Total tax . . . . . . . . . . . . . . . . | 4 | | | |

**Payments and Credits (see instructions)**

| | | | | | |
|---|---|---|---|---|---|
| 5 a | Overpayment in prior year allowed as a credit . . . . | 5a | | | |
| b | Estimated tax payments . . . . . . . . . . . | 5b | | | |
| c | Refund applied for on Form 4466 . . . . . . . . | 5c | | | |
| d | Subtract line 5c from the sum of lines 5a and 5b . . . | 5d | 0 | 0 | 0 |
| e | Tax deposited with Form 7004 . . . . . . . . . | 5e | | | |
| f | Credit from Form 2439 . . . . . . . . . . . | 5f | | | |
| g | Credit for federal tax on fuels and other refundable credits . . . . . . . . . . . . . . . . | 5g | | | |
| 6 | Tax deposited or paid with (or after) the filing of the original return . . . . . . . . . . . . . . | 6 | | | |
| 7 | Add lines 5d through 6, column (c) . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | | | 0 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted . . . . . . . . . . . . | 8 | | | |
| 9 | Subtract line 8 from line 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | | | 0 |

**Tax Due or Overpayment (see instructions)**

| | | | |
|---|---|---|---|
| 10 | Tax due. Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 10 | 0 |
| 11 | Overpayment. Subtract line 4, column (c), from line 9 . . . . . . . . . . . . . . . ▶ | 11 | 0 |
| 12 | Enter the amount of line 11 you want: Credited to 20 __ 16 Estimated tax ▶ _____ Refunded ▶ | 12 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer [signature]    Date 5/2/2016    Title VP, CFO & Treasurer

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For Paperwork Reduction Act Notice, see instructions.
HTA

Form **1120X** (Rev. 1-2011)

Form 1120X (Rev. 1-2011)          AVX Corporation          ████████          Page **2**

**Part II**  **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation In detail. Also, see **What To Attach** in the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** in the instructions, and check here . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

AVX Corporation is amending its 3/31/2014 federal Form 1120 for the following reasons:

1) To include a statement of non-willful intent and request for relief under Regulation Section 1.367(a)-8(p) for

late-filed Gain Recognition Agreement Annual Certification for AVX Corporation and AVX Development Incorporated.

2) To include a statement of relief for reasonable cause under Regulation Section 1.6038B-1(f) and 1.6038B-1T(f)

for late-filed Gain Recognition Agreement Annual Certification for AVX Corporation and AVX Development Incorporated.

3) To include the Gain Recognition Agreement Annual Certification under Regulation Section 1.367(a)-8(g).

Form **1120X** (Rev. 1-2011)

F.E.I. # ███████

**Attachment to Consolidated Form 1120**
**For Year Ended March 31, 2014**

---

Gain Recognition Agreement Annual Certification under Reg. § 1.367(a)-8(g)

---

AVX Corporation and Subsidiaries hereby provides the annual certification as required by Reg. § 1.367(a)-8(g), as follows:

Original Gain Recognition Agreement (GRA):

Date of transaction: March 12, 2012 (taxable year ended March 31, 2012)

Transferors: AVX Corporation, EIN ███████, and AVX Development Corp., EIN 11-2663341

Transferee: AVX Koninkrijk der Nederlanden, EIN ███████

Transferred corporation: Elco Europe GmbH (90% beneficial interest)

With regard to the above-referenced GRA and the taxable year ended March 31, 2014, the taxpayer certifies as follows:

1. A gain recognition event has not occurred during the taxable year.

2. No event occurred during such taxable year that has terminated or reduced the amount of gain subject to the GRA.

3. There has been no disposition of assets not in the ordinary course of business by the above transferred corporation during such taxable year.

AVX Corporation, EIN: █████████
AVX Development Inc., EIN: ███████
Form 1120X for Tax Year Ended March 31, 2014

### STATEMENT OF NON-WILLFUL INTENT AND REQUEST FOR RELIEF UNDER TREAS. REG. § 1.367(a)-8(p) FOR LATE-FILED GAIN RECOGNITION AGREEMENT ANNUAL CERTIFICATION

On December 15, 2014, AVX Corporation ("AVX" or "the company") filed Form 1120, *U.S. Corporation Income Tax Return*, for the AVX consolidated group's ("AVX group") tax year ended March 31, 2014 ("FY 2014"). The company's original return did not include a required document related to the transfer of shares in a foreign corporation.

This Form 1120X, *Amended U.S. Corporation Income Tax Return* ("the amended return"), is being filed, in part, to provide the Internal Revenue Service ("IRS") with an original Gain Recognition Agreement Annual Certification ("GRA certification") for AVX and AVX Development Inc., which was inadvertently not attached to the original return for FY 2014.

AVX Development Inc. is a member of the AVX group.

This amended return is being filed as soon as possible following the discovery in December 2015 that the GRA certification was inadvertently not attached to the original return. AVX is under IRS examination for the tax year (FY 2014) for which non-willful intent relief is being requested, and is filing such amended return at the request of and with the agreement of IRS agents conducting such examination. Such IRS agents are each being furnished a complete copy of this amended return as filed.

Based on the facts set forth below, the GRA certification was not timely filed due to reasonable cause and not due to willful neglect. AVX respectfully requests that the filing of such GRA certification be treated as timely made, and that the failure to file the GRA certification with AVX's original Form 1120 not be considered a triggering event under Reg. § 1.367(a)-8(j).

For transfers occurring after March 13, 2009, Treas. Reg. §§ 1.367(a)-8(p)(1) and (2) provide relief to a taxpayer that fails to file a timely GRA and/or GRA certification, if the taxpayer is able to show that such failure is due to reasonable cause and not willful neglect, and if the person files the required document(s) as soon as he becomes aware of the failure. In satisfaction of those requirements, AVX is submitting the required GRA certification to the IRS.

AVX understands that, pursuant to IRC Section 6501(c)(8)(A) and Treas. Reg. § 1.6038B-1(f)(1)(ii), since this amended return contains "information required to be reported" as defined by the above authority, the time for assessment of any tax imposed related to such filing shall not expire before a date three (3) years after the filing of this amended return with the IRS.

I.    **Background**

A.    The Transfers by AVX and AVX Development, Inc. to AVX CV

AVX and AVX Development Inc. owned 99.1 and 0.9 percent interests, respectively, in Elco Europe GmbH ("Elco"), a German *Gesellschaft mit beschränkter Haftung* that is treated as a corporation for U.S. federal income tax purposes. Such total 100 percent interest was acquired on April 1, 1995. Pursuant to IRC Section 351, on March 12, 2012, AVX and AVX Development, Inc. transferred 89.1 and 0.9 percent interest, respectively, in Elco to AVX Koninkrijk der Nederlanden CV ("AVX CV") in exchange for interests constituting 99.0 and 1.0 percent, respectively, of the voting power and value of AVX CV.

AVX CV is a Dutch *Commanditaire Vennotschap* that is treated as a corporation for U.S. federal income tax purposes. However, for Dutch purposes it is a partnership and therefore needs to have two owners. Accordingly, AVX structured the transfers of interests in Elco to AVX CV so that AVX would have a 99 percent ownership interest in AVX CV and AVX Development Inc. would have a 1 percent ownership interest.

That transaction was one component in AVX's implementation of a European holding company structure to align its businesses along mainly geographic lines to allow for greater flexibility with respect to global strategic planning across business lines and geographic markets. It is expected that the European holding company will hold many of AVX's foreign subsidiaries. Such a structure will increase business efficiencies by reducing administrative costs related to compliance, overhead, and duplication of efforts existing in AVX's organization. Furthermore, by centralizing its non-U.S. operations under a holding company, AVX will be better positioned to finance its global operations.

The ultimate goal of the above-described restructuring is to create an aligned global organization that complements and facilitates the operational management of AVX.

B. AVX's Corporate Tax Department

Emile Artus, Director of Taxes, is the head of the corporate tax department at AVX, and as such bears responsibility for including any GRAs and/or GRA certifications in AVX's consolidated tax return. Mr. Artus was not familiar with the GRA rules at the time the FY 2012 return was filed. AVX had never been required to file a GRA or any related certification prior to the March 2012 reorganization of Elco.

Mr. Artus is a Certified Public Accountant with over 25 years of experience in tax compliance. He was appointed to the position of Director of Taxes at AVX on April 1, 2011. His positions prior to his current position at AVX were with small, domestic public and private companies that did not have the complex international operations of AVX. Mr. Artus has extensive experience in domestic tax compliance and in tax accounting. Prior to joining AVX, his international tax compliance work was confined to the preparation of information returns (e.g., Forms 5471, 8858, etc).

Mr. Artus had some experience in one of his former positions with the sale of foreign subsidiaries to a third party, but there was no reporting required under IRC Section 367 as a result of those transactions. Moreover, any unusual tax compliance would have been prepared for that former employer (the selling company) by external tax consultants. At none of his former positions had there been any transfer of a foreign subsidiary to another member of the same corporate group, and the above transaction at AVX was the first such transaction to which Mr. Artus has had exposure during his career.

AVX decided to enter into the transaction at issue upon the engagement of PricewaterhouseCoopers LLP ("PwC") on July 12, 2011. At that time, Mr. Artus had assumed the position of Director of Taxes at AVX, but was still, with the assistance of the former Director who had been retained as a consultant, transitioning into the position. That transition continued up to and including the reorganization of Elco which was completed on March 12, 2012.

Additionally, during the course of the reorganization of Elco, AVX's tax department experienced a 100 percent turnover of the entire AVX corporate tax group during the year prior to March 12, 2012.

Because Mr. Artus was working with many new technical international tax issues relating to the reorganization of Elco, he relied heavily on PwC for tax advice.

2

C.  Events Surrounding the Failure to File the GRAs with the Original Tax Return

PwC provided AVX with a work-plan prior to March 2012 that sets forth specific instructions that AVX needed to prepare and file a GRA relating to reorganization of Elco. AVX and Mr. Artus, however, were relying heavily on PwC for advice and expected PwC to remind them of any filings that had to be made as a result of the reorganization. The notation in PwC's work-plan regarding the requirement to file a GRA is located in the section that discusses that actual transaction rather than in the final section of the work plan entitled "Documentation." The Documentation section discusses "required reorganization statements for Forms 5471" in general terms and states expressly that PwC will prepare the reorganization statements required under Treas. Reg. §1.351-3 for AVX to file with its FY 2012 return.

PwC, however, believed it was not engaged to complete the GRAs and that AVX understood it must prepare and file the agreements. PwC expected that AVX would complete the agreements as part of AVX's annual tax compliance work for the FY 2012 tax year. Accordingly, PwC did not ask AVX prior to December 15, 2012, the extended due date of AVX's Form 1120, whether AVX had filed the GRAs with its return.

Mr. Artus and AVX's corporate tax group believed that the Form 1120 as filed satisfied all reporting requirements for the Elco reorganization because (1) all Forms 5471, *Information Return of U.S. Persons With Respect to Certain Foreign Corporations*, were filed with the required disclosure of the Elco reorganization on the appropriate Schedules O, and (2) the Documentation section of PwC's work-plan does not state that GRAs must be filed.

## II.  Discovery in January 2013 of the Failure to File GRAs in the Original FY 2012 Tax Return

In late January 2013, Mr. Artus was contacted by PwC regarding required FY 2012 disclosures needed related to the Elco reorganization. It was discovered that GRAs related to the reorganization, in addition to other required disclosures, had not been timely filed in December 2012 with the original FY 2012 federal tax return.

PwC was immediately engaged to prepare such required disclosures, and disclosures thus prepared were furnished to AVX for their inclusion in an amended tax return. During the preparation process, draft copies of the GRAs were circulated by PwC, and revisions returned by the AVX tax department, but AVX has no record of having received final versions of such GRAs from PwC.

The original FY 2012 amended return, which included all required disclosures supplied in final form by PwC, was filed on March 13, 2013. Although the filing included appropriate Forms 8838, which provided consent to extend the assessment of any tax related to the Elco reorganization to March 31, 2020, the related GRAs themselves were not included in this original amended return, although AVX's intent was that they be so included.

## III.  Discovery in December 2015 of the Failure to File GRAs in the Original FY 2012 Amended Tax Return, and GRA Certifications in the Original FY 2013 and 2014 Tax Returns

In December 2015, J. Rowena Cheek, an IRS agent then conducting the international portion of a tax audit of the AVX group for its tax years ended March 31, 2013 and 2014 (FYs 2013 and 2014, respectively), contacted the AVX tax department to request the GRAs related to the Elco restructuring, as well as required GRA certifications for each

3

**EXHIBIT 8**



Department of the Treasury
Internal Revenue Service
Ogden UT  84201-0038

| Notice | CP138 |
|---|---|
| Tax period | March 31, 2017 |
| Notice date | March 26, 2018 |
| Employer ID number | |
| To contact us | Phone 1-800-829-0115 |
| Page 1 of 2 | |

010174.838277.2167.21501 1 MB 0.424 370

AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039

010174

We applied your Form 1120 overpayment to other tax you owe

# Refund due: $3,198,250.58

You overpaid $3,798,250.58 on your Form
1120, Corporation Income Tax, for the tax period
ending March 31, 2017.

The table on page 2 explains where we applied
your overpayment.

## Summary

| | |
|---|---|
| Overpayment | $3,798,250.58 |
| Amount applied to other taxes | 600,000.00 |
| **Refund due** | **$3,198,250.58** |

## What you need to do

You don't need to do anything.

Continued on back...



AVX CORPORATION
% EMILE ARTUS
1 AVX BLVD
FOUNTAIN INN  SC  29644-9039

| Notice | CP138 |
|---|---|
| Notice date | March 26, 2018 |
| Employer ID number | |

## Contact information

If your address has changed, please call 1-800-829-0115 or visit www.irs.gov.

☐ Please check here if you've included any correspondence. Write your Employer ID
number (            the tax period (March 31, 2017), and the form number
(1120) on any correspondence.

| Primary Phone | Best time to call | ☐ a.m.<br>☐ p.m. | Secondary Phone | Best time to call | ☐ a.m.<br>☐ p.m. |
|---|---|---|---|---|---|

INTERNAL REVENUE SERVICE
OGDEN UT  84201-0038

330379007 SH        02 2 201703

# EXHIBIT 9

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

George B. Abney                     Direct Dial: 404-881-7980                     Email: george.abney@alston.com

March 9, 2019

**VIA FAX: 855/627-0554**

J. Rowena Cheek
Revenue Agent
Department of the Treasury
Internal Revenue Service
10715 David Taylor Dr.
Charlotte, NC 28262

> Re:  *AVX Corporation*
> *TIN:* ▮▮▮▮▮▮▮▮
> *Protest of Assessed I.R.C. § 6038B Penalties (2012-2014)*
> *Certified Mail Receipt Documentation*
> *of Mailing to Ogden, Utah.*

Dear Agent Cheek:

As per the voice mail message I for you earlier today, attached to this letter is documentation that on January 11, 2019, AVX Corporation ("AVX") submitted its protest to the IRS office located in Ogden, Utah, regarding the IRS's assessment of $600,000 in penalties under I.R.C. § 6038B for tax years 2012 through 2014. The attached documentation includes a copy of the first page of AVX's protest, a copy of the certified mail receipt stamped as received by the IRS in Ogden, Utah, on January 18, 2018, and a copy of the U.S. Postal Service Tracking documentation confirming delivery in Ogden Utah, on January 16, 2018.

As I stated in the voice mail message I left for you, since submitting this protest AVX has not received any responsive correspondence from the IRS.

Revenue Agent J. Rowena Cheek
March 19, 2019
*Re: AVX Corporation*
    *TIN:* ███████
    *Protest of Assessed I.R.C. § 6038B Penalties (2012-2014)*
    *Certified Mail Receipt Documentation*
Page 2

    I trust this information will enable you to determine the status of AVX's protest within the IRS. Should it be necessary, AVX will resubmit its protest.

    ***I respectfully request that you call me to advise me of the status of this protest as soon as you are able to determine it status.*** As you are aware, this issue has been lingering with the IRS for well over a year. My client would like to proceed toward a resolution as quickly as possible.

    Thank you for your time and consideration of this important matter. Please do not hesitate to contact me should you have any questions about this protest, the enclosed exhibits, or any other relevant issues.

                Sincerely,

                George B. Abney

Enclosure

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

· 404-881-7000
Fax: 404-881-7777
www.alston.com

George B. Abney                 Direct Dial: 404-881-7980                 Email: george.abney@alston.com

January 11, 2018

<u>VIA CERTIFIED MAIL</u>
Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0039

> Re:    *AVX Corporation*
>         *TIN:* ▌
>         *Protest of Assessed I.R.C. § 6038B Penalties (2012-2014)*

To whom it may concern:

AVX Corporation ("AVX") hereby protests the IRS's assessment of $600,000 in penalties under I.R.C. § 6038B[1] for tax years 2012 through 2014, as set forth in its Notices CP215, dated December 18, 2017, and in its Form 886-A, Explanation of Items, dated October 12, 2017. *See* Exhibit 1 (IRS Notices CP215 For Tax Years 2012, 2013, and 2014 and IRS Form 886-A, Explanation of Items). Undersigned counsel is authorized to represent AVX. *See* Exhibit 2 (IRS Form 2848, Power of Attorney).

The taxpayer's name, address, and taxpayer identification number are:

AVX Corporation
1 AVX Boulevard
Fountain Inn, South Carolina 29644
TIN: ▌

---

[1] All references to the "I.R.C." or the "Code" are to the Internal Revenue Code of 1986, as amended.



7016 2070 0000 2072 7362

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)
☐ Return Receipt (electronic)
☐ Certified Mail Restricted Delivery
☐ Adult Signature Required
☐ Adult Signature Restricted Delivery

Postage

Total Postage and Fees

Sent To
Department of the Treasury
Internal Revenue Service

Street and Apt. No., or PO Box No.
Ogden, UT 84201-0039

City, State, ZIP+4

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0039

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2384 6249 9102 62

2. Article Number (Transfer from service label)
7016 2070 0000 2072 7362

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

JAN 1 8 2019
OGDEN UT

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

USPS.com® - USPS Tracking® Results                              Page 1 of 3

# USPS Tracking®

FAQs > (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package +

**Tracking Number:** 70162070000020727362                 Remove ✕

Your item was delivered at 3:06 pm on January 16, 2018 in OGDEN, UT 84401.

## ⊘ Delivered

January 16, 2018 at 3:06 pm
Delivered
OGDEN, UT 84401

Feedback

**Tracking History**                                              ⌃

**January 16, 2018, 3:06 pm**
Delivered
OGDEN, UT 84401
Your item was delivered at 3:06 pm on January 16, 2018 in OGDEN, UT 84401.

**January 13, 2018, 7:59 pm**
Arrived at Unit
SALT LAKE CITY, UT 84199

**January 13, 2018, 7:57 pm**
Arrived at USPS Regional Facility
SALT LAKE CITY UT NETWORK DISTRIBUTION CENTER

---

**Product Information**                                           ∨

---

See Less ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)**

Feedback

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up
to:

• See images* of incoming mail.

• Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

### Sign Up

### (https://reg.usps.com/entreg/RegistrationAction_input?

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized
envelopes and mailpieces that are processed through USPS automated equipment.

Feedback

**Buchwald, Seth**

| | |
|---|---|
| **From:** | Cheek J. Rowena <J.Rowena.Cheek@irs.gov> |
| **Sent:** | Friday, March 29, 2019 10:32 AM |
| **To:** | Abney, George |
| **Subject:** | RE: "A" case Protest |

**EXTERNAL SENDER – Proceed with caution**

I am glad I could help some in this situation, and I very much understand the frustration. Please let me know if I can be of any further assistance in the future.

## J. Rowena Cheek, CPA
Revenue Agent
SE:LB:CBA:E:TR4:T1136
☎  Tel: (704) 548-4246
🖷  Fax: (855) 627-0554

**From:** Abney, George <George.Abney@alston.com>
**Sent:** Friday, March 29, 2019 10:18 AM
**To:** Cheek J. Rowena <J.Rowena.Cheek@irs.gov>
**Subject:** RE: "A" case Protest

Thank you for your email.  I very much appreciate you help.

Just to let you know, we filed the protest before the IRS took the refund to cover the penalties.  Also, after the IRS seized the refund, I was told by the IRS that I did not need to file a Form 843 and that our protest would be sufficient for the IRS to review the matter.  It is extraordinarily frustrating that the IRS essentially ignored our protest, seized the refund to satisfy the penalties, and then continued to ignore (or lose) our protest for well over a year now.

Again, I am not blaming you.  I am just letting you know what the facts are and expressing our frustration with how others at the IRS have handles this.

Thanks again for your assistance.  We will go ahead and proceed with filing a Form 843, which will raise the exact same issues and arguments that we raised in our protest.

Thanks,

George

**George Abney**
Alston & Bird LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA  30309-3424
Direct:     404-881-7980
Fax:        404-253-8380
george.abney@alston.com

**From:** Cheek J. Rowena [mailto:J.Rowena.Cheek@irs.gov]
**Sent:** Friday, March 29, 2019 9:10 AM
**To:** Abney, George <George.Abney@alston.com>
**Subject:** RE: "A" case Protest

**EXTERNAL SENDER – Proceed with caution**

Unfortunately, when the TP did petition Appeals (and didn't file Form 843), the case seems to have gotten lost somewhere along the way.

J. Rowena Cheek, CPA
Revenue Agent
SE:LB:CBA:E:TR4:T1136
SSTel: (704) 548-4246
TTFax: (855) 627-0554

-----Original Message-----
From: Abney, George <George.Abney@alston.com>
Sent: Friday, March 29, 2019 9:02 AM
To: Cheek J. Rowena <J.Rowena.Cheek@irs.gov>
Subject: Re: "A" case Protest

Did they not receive our protest?

Sent from my iPhone

George Abney
Alston & Bird LLP
<x-apple-data-detectors://0>One Atlantic Center<x-apple-data-detectors://1/1>
1201 W. Peachtree Street<x-apple-data-detectors://1/1>
<x-apple-data-detectors://0>Atlanta, GA<x-apple-data-detectors://1/1> 30309-3424 404-881-7980<tel:404-881-7980> I <tel:404-881-7777> 404-<tel:404-253-8380>253-8380<tel:404-253-8380> (FAX)
george.abney@alston.com<mailto:george.abney@alston.com>

On Mar 29, 2019, at 9:00 AM, Cheek J. Rowena
<J.Rowena.Cheek@irs.gov<mailto:J.Rowena.Cheek@irs.gov>> wrote:

EXTERNAL SENDER - Proceed with caution

Good morning Mr. Abney,

After some more digging and research, I have confirmed with the technical advisor and the Appeals that the TP has two years, per IRC 6511, from the penalty payment was posted in our system (12/18/2017) to file a Form 843 to claim a refund of a penalty with the Service Center/Campus. If, by 12/18/2019, TP hadn't filed the claim, then the refund will be barred by statute. If the Campus rejects the claim, then the TP will have the right to take it to the Appeals.

Should you have any further questions, please feel free to reach back out!

Regards,

J. Rowena Cheek, CPA
Revenue Agent
SE:LB:CBA:E:TR4:T1136
* Tel: (704) 548-4246
* Fax: (855) 627-0554

From: Cheek J. Rowena
Sent: Thursday, March 07, 2019 7:46 AM
To: 'Abney, George' <George..Abney@alston.com<mailto:George.Abney@alston.com>>
Subject: "A" case Protest

Good morning Mr. Abney,

I am sorry that we kept on playing tag. Regarding the "A" case protest, my record indicated that we spoke on January 9th, 2018. During our conversation, I mentioned to you that the penalty case had been closed in October 2017, and the best solution was to send the protest to the address on the notice that the Taxpayer received, dated December 18, 2017. You sent me the notice for all three years on the date prior to our conversation. You acknowledged and said you would do so.

Our Appeals jurisdiction does not show these years or penalty for the Taxpayer currently. Please provide the tracking records showing that the protest was sent in response to the notice. If the Taxpayer has received any additional collection notices or contact since then, please also share that information with me.

Regards,

J. Rowena Cheek, CPA
Revenue Agent
Badge #1000860483
SE:LB:CBA:E:TR4:T1136
Internal Revenue Service
4905 Koger Blvd.
Greensboro, NC 27407-2743
* Tel: (704) 548-4246
* Fax: (855) 627-0554
* j.rowena.cheek@irs.gov<mailto:j.rowena.cheek@irs.gov>

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.